DOUGLAS E. GERSHUNY, EXEC. DIR.
SOUTH JERSEY LEGAL SERVICES, INC.
745 Market St.
Camden, NJ 08102
Phone: 856-964-2010, Ext. 6232
Email: OPomar@lsnj.org
By: OLGA D. POMAR, ESQ.
Attorneys for Plaintiffs

POTTER & DICKSON
194 Nassau Street
Princeton, NJ 08542
Phone: (609) 921-9555
Email: Potterrex@cs.com
By: R. WILLIAM POTTER, ESQ.
Attorneys for Plaintiffs

AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
Phone: (202) 434-2060
Email: SSilverstein@aarp.org
By: SUSAN ANN SILVERSTEIN, ESQ.
(pending admission *pro hac vice*)
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **MT. HOLLY GARDENS CITIZENS IN ACTION, INC.**, a New Jersey non-profit corporation**, PEDRO AROCHO, REYNALDO AROCHO, ANA AROCHO, LYRA BAEDRESINGH, CHRISTINE BARNES, BERNICE CAGLE, LEON CALHOUN, GEORGE CHAMBERS, DOROTHY CHAMBERS, SANTOS CRUZ, ELIDA ECHEVARIA, NORMAN HARRIS, MATTIE HOWELL, NANCY LOPEZ, VINCENT MUNOZ, ELMIRA NIXON, LEONARDO PAGAN, ROSEMARY ROBERTS, WILLIAM ROBERTS, LISSETTE RODRIGUEZ, EFRAIM ROMERO, HENRY SIMONS, JOYCE STARLING, TAISHA TIRADO, RADAMES TORRES-MORENO, LILLIAN TORRES-MORENO, DAGMAR VICENTE, CHARLIE MAE WILSON** and **LEONA WRIGHT,** | Case No.:  COMPLAINT AND DEMAND FOR JURY TRIAL |
| *Plaintiffs,* | |
| *vs.* | |
| *(continued)* | |

**TOWNSHIP OF MOUNT HOLLY**, a
municipal corporation of the State of New Jersey,
**TOWNSHIP COUNCIL OF TOWNSHIP OF
MOUNT HOLLY,** as governing body of the
Township of Mount Holly, **KATHLEEN
HOFFMAN**, as Township Manager of the
Township of Mount Holly, **BROOKE
TIDSWELL, III,** as Mayor of the Township of
Mount Holly, **KEATING URBAN PARTNERS,
L.L.C.,** a company doing business in New Jersey,
**TRIAD ASSOCIATES, INC.**, a corporation
doing business in New Jersey,

*Defendants.*

## I. <u>PRELIMINARY STATEMENT</u>

1.  This is a civil rights action challenging Mount Holly Township's ("Township") wide-scale redevelopment of the neighborhood known as Mt. Holly Gardens ("Gardens").  Plaintiffs are an association of residents, Mt. Holly Gardens Citizens in Action, Inc.,  ("CIA"), and 29 individual residents ("Residents") living in the Gardens, which is a cohesive, ethnically diverse neighborhood within Mt. Holly Township that is predominantly African-American and Hispanic with mostly low and moderate income families.  CIA and Residents are challenging the Township's sweeping redevelopment project that is demolishing existing homes, displacing numerous families, and dismantling and destroying the entire Gardens neighborhood.

2.  The Township and its redevelopers have been and currently are aggressively implementing their redevelopment project, ultimately seeking acquisition, through purchase and eminent domain, and total demolition of all 329 homes within the Gardens redevelopment area affordable to current and displaced families and replacement with new, much higher-priced market rate homes intended for households that are more affluent.  In carrying out redevelopment, the Township and its redevelopers have greatly increased blighted conditions and have rendered the Gardens unsafe and unlivable.   Among other things, under the implied threat

of eminent domain, the Township has systematically acquired, vacated and boarded up more than 200 previously occupied homes—approximately two-thirds of all residential properties within the Gardens—and has demolished to date approximately 70 properties. If not stopped, the Township and its redevelopers will succeed in irrevocably tearing down the most identifiable minority community within Mt. Holly—with the highest rates of African-American and Hispanic homeownership within Burlington County—and permanently displacing hundreds of lower income minority residents from their community where they will no longer be able to afford to live.

3.   In prior state court litigation, the Township's finding of "blight," i.e., its determination that the Gardens neighborhood met New Jersey's criteria for designation as an "area in need of redevelopment," was upheld in April 2005.   However, in August 2005 and subsequently upheld on appeal in 2007, CIA's and Residents' civil rights and other substantive challenges to the redevelopment plan were dismissed without prejudice as then not being ripe for adjudication.

4.   These claims are now unquestionably ripe in light of the Township's subsequent destructive implementation actions devastating the Gardens community.   Specifically, the Township and its redevelopers have unlawfully discriminated against the Residents on the basis of race and national origin in violation of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1982; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*; and Equal Protection under the United States and New Jersey Constitutions.   Furthermore, the Township's actions deprive Residents of just compensation by driving down the value of their homes, while the Township has failed to

adequately plan or prepare for replacement housing realistically affordable to current and displaced residents.

5.  The Township has also acted arbitrarily, capriciously, unreasonably, *ultra vires* and unconstitutionally, by making substantial *de facto* changes to the redevelopment plan in closed meetings and implementing the revisions without engaging in the public process mandated by law to amend a redevelopment plan, in violation of the New Jersey Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et. seq.*, and the Open Public Meetings Act, N.J.S.A. 10:40-6 *et. seq.*, as well as procedural due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and fundamental fairness protected under Article 1, Paragraph 1 of the New Jersey Constitution.  The Township has additionally acted unconstitutionally in violation of the general welfare under Article I, Paragraph 1, of the New Jersey Constitution, by carrying out redevelopment activities that will result in the destruction and substantial net loss of housing affordable to low and moderate income families, as well as the forcible displacement of hundreds of low and moderate income residents from the Gardens community without providing affordable replacement housing.

6.  Residents and CIA seek, among other things, declaratory and injunctive relief: invalidating the redevelopment plan; mandating that the Township carry out redevelopment in the Gardens in a manner having the least discriminatory adverse impact upon African-American and Hispanic households; and prohibiting implementation without providing adequate affordable replacement housing for all current and displaced Gardens residents. Residents and CIA also seek damages and/or just compensation sufficient for Residents to secure permanent replacement housing in the local housing market.

## II.  <u>JURISDICTION</u>

7.  Jurisdiction over the Plaintiffs' claims is conferred on this court by 28 U.S.C. § 1331 (federal question jurisdiction) in that this action arises under the Constitution and laws of the United States; 28 U.S.C. § 1343(a)(4) because the Plaintiffs seek equitable and other relief under Acts of Congress providing for the protection of civil rights under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*; 42 U.S.C. § 3613 for civil actions under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*; and 42 U.S.C. § 1983, which provides redress for the deprivation, under color of state law, of rights, privileges and immunities secured to all citizens and persons within the jurisdiction of the United States by the Constitution and laws of the United States.

8.  Plaintiffs seek declaratory and injunctive relief against the Defendants pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief pursuant to 42 U.S.C. § 3613(c)(1).

9.  In addition, 28 U.S.C. § 1367 confers supplemental jurisdiction on this court over Plaintiffs' related claims under state law.

10.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Plaintiffs' claims arose in this district.

### III. <u>PARTIES</u>

**A.  Plaintiffs**

11.  Plaintiff Mt. Holly Gardens Citizens in Action ("CIA"), Inc., is a voluntary membership non-profit corporation composed of residents of Mt. Holly Gardens.  Its primary purpose is to advocate for the wellbeing and the betterment of the residents and neighborhood. Its address is: c/o Santos Cruz, 356 South Martin Ave, Mt. Holly, New Jersey 08060.  CIA brings this action on its own behalf and on behalf of its members.  The individually named Plaintiffs are members of CIA.

12.    Plaintiff Pedro Arocho is a resident of Mt. Holly Gardens living at 316 South Martin Street, Mt. Holly, New Jersey 08060. He owns his home. He is Hispanic.

13.    Plaintiffs Reynaldo and Ana Arocho are residents of Mt. Holly Gardens living at 154 Levis Drive, Mt. Holly, New Jersey 08060. They have lived in the Gardens for 19 years. They own their home. They are Hispanic.

14.    Plaintiff Lyra Baedresingh is a resident of Mt. Holly Gardens living at 303 South Martin Street, Mt. Holly, New Jersey 08060.  She is a homeowner. She is African-American.

15.    Plaintiff Christine Barnes is a resident of Mt. Holly Gardens living at 122 Joseph Place, Mt. Holly, New Jersey 08060.  She is a tenant. She is White.

16.    Plaintiff Bernice Cagle is a resident of Mt. Holly Gardens living at 281 Grant Street, Mt. Holly, New Jersey 08060.  She is a homeowner. She is African-American.

17.    Plaintiff Leon Calhoun is a resident of Mt. Holly Gardens living at 113 Levis Drive, Mt. Holly, New Jersey 08060.  He is a homeowner. He is African-American.

18.    Plaintiffs George and Dorothy Chambers are residents of Mt. Holly Gardens living at 341 South Martin, Mt. Holly, New Jersey 08060.  They are homeowners and senior citizens. They are African-American.

19.    Plaintiff Santos Cruz is a resident of Mt. Holly Gardens living at 137 Joseph Place, Mt. Holly, New Jersey 08060.  He is a homeowner. He is Hispanic.

20.    Plaintiff Elida Echevaria is a resident of Mt. Holly Gardens living at 370 South Martin Street, Mt. Holly, New Jersey 08060. She owns her home. She is Hispanic.

21.    Plaintiff Norman Harris is a resident of Mt. Holly Gardens living at 313 South Martin Street, Mt. Holly, New Jersey 08060. He is a senior citizen and has lived in the property for 36 years. He is a homeowner. He is African-American.

22.    Plaintiff Mattie Howell is a resident of Mt. Holly Gardens living at 118 Levis Drive, Mt. Holly, New Jersey 08060.  She has lived there with her family for 37 years. She is a homeowner and a senior citizen. She is African-American.

23.    Plaintiff Nancy Lopez is a resident of Mt. Holly Gardens living at 319 North Martin Street, Mt. Holly, New Jersey 08060.  She is a homeowner. She is Hispanic.

24.    Plaintiff Vincent Munoz is a resident of Mt. Holly Gardens living at 382 South Martin Street, Mt. Holly, New Jersey 08060.  He is a senior citizen and a homeowner. He is Hispanic.

25.    Plaintiff Elmira Nixon is a resident of Mt. Holly Gardens living at 21 Saul Place, Mt. Holly, New Jersey 08060.  She is an elderly widow and is homebound.  She owns her own home and has lived there lived there for 28 years. She is African-American.

26.    Plaintiffs William and Rosemary Roberts are residents of Mt. Holly Gardens living at 346 South Martin Street, Mt. Holly, New Jersey 08060.  They are homeowners. They are White.

27.    Plaintiff Lissette Rodriguez is a resident of Mt. Holly Gardens living at 354 South Martin Street, Mt. Holly, New Jersey 08060.  She is a homeowner. She is Hispanic.

28.    Plaintiff Efraim Romero is a resident of Mt. Holly Gardens living at 115 Joseph Place, Mt. Holly, New Jersey 08060.  He is a homeowner. He is Hispanic.

29.    Plaintiff Henry Simons is a resident of Mt. Holly Gardens living at 7 Saul Place, Mt. Holly, New Jersey 08060.  He has lived there for 23 years. He is a senior citizen and a homeowner. He is White.

30.     Plaintiff Joyce Starling is a resident of Mt. Holly Gardens living at 23 Saul Place, Mt. Holly, New Jersey 08060.  She has lived there for 36 years. She is a homeowner. She is a senior citizen and is African-American.

31.     Plaintiffs Taisha Tirado and Leonardo Pagan are residents of Mt. Holly Gardens living at 211 Levis Drive, Mt. Holly, New Jersey 08060.  They are tenants. They are Hispanic.

32.     Plaintiffs Radames and Lillian Torres-Moreno are residents of Mt. Holly Gardens living at 308 North Martin Street, Mt. Holly, New Jersey 08060.  . They are homeowners. He is Hispanic.

33.     Plaintiff Dagmar Vicente is a resident of Mt. Holly Gardens living at 371 South Martin Street Mt. Holly, New Jersey 08060. She rents the premises and lives there with two children.  She is White.

34.     Plaintiff Charlie Mae Wilson is a resident of Mt. Holly Gardens living at 120 Joseph Place, Mt. Holly, New Jersey 08060.  She is 78 years old and owns her own home.  She is African-American.

35.     Plaintiff Leona Wright is a resident of Mt. Holly Gardens living at 208 Levis Drive, Mt. Holly, New Jersey 08060.  She is a homeowner and has lived there for 33 years. She is 89 years old and widowed.  She is African-American.

**B.  Defendants**

36.     The Township Defendants, herein referred to as "Township," are as follows:

   a.   Defendant Township of Mount Holly ("Township") is a municipal corporation chartered under the laws of the State of New Jersey.

   b.   Defendant Township Council of Township of Mount Holly is the governing body of the Township. The Council is responsible for the passage of local ordinances

and resolutions, including Ordinance No. 2003-12 adopting the Gardens Redevelopment Plan, Ordinance 2005-07 adopting the West Rancocas Redevelopment Plan, and all ordinances and resolutions related to the effectuation of its redevelopment plan, for the appointment of the Township Manager, and for passing and modifying the Township's budget.

c. Defendant Kathleen Hoffman is the Township Manager of the Township of Mount Holly and is the chief executive and administrative officer of the Township responsible for the overall administration of the Township's agencies and execution of the Township's laws. Defendant Hoffman is sued herein in her official capacity.

d. Defendant Brooke Tidswell, III, is the Mayor of the Township of Mount Holly and is responsible, *inter alia*, for presiding over Township Council meetings and executing bonds, notes, contracts and written obligations of the Township. Defendant Tidswell is sued herein in his official capacity.

37.   The Redeveloper Defendants, herein referred to as "Redevelopers," are as follows:

a. Defendant Keating Urban Partners, L.L.C. ("Keating") is a limited liability company with offices located at One Liberty Place, New Brunswick, NJ 08901. Defendant Keating entered into a redevelopment agreement with the Township to implement the WR Redevelopment Plan and has been actively engaged since that time in project planning, development, and implementation.

b. Defendant Triad Associates, Inc. ("Triad") is a corporation doing business in New Jersey with offices at 238 West Chestnut Avenue, Vineland, NJ 08360, which the Township and/or Keating hired to assist with implementation of the WR

Redevelopment Plan, including but not limited to serving as property manager of Township-owned rental properties and conducting relocation activities.

## IV.  FACTUAL ALLEGATIONS

### A.  Mt. Holly Gardens Neighborhood

38.    Mt. Holly Gardens ("the Gardens") is situated on 30 acres of land within downtown Mt. Holly Township in Burlington County, New Jersey.

39.    It is a cohesive, racially and ethnically diverse community.

40.    At the time the redevelopment process started in 2000, the neighborhood contained 329 houses.

41.    The houses were constructed during the 1950s.

42.    Houses are primarily two-story buildings of solid brick construction with joists made of old-growth hardwood, and are situated in rows of 8 to 10 homes set back approximately 50 feet from the street, allowing for front and back yards.

43.    Many homes are well-maintained and have attractively landscaped yards and gardens.

44.    Until approximately March 2004 there was a playground area of approximately 14,000 square feet and a community center converted from a dwelling unit, both which the Township owned.

### B.  Residents of Mt. Holly Gardens

45. According to the 2000 U.S. Census, Burlington County's total population was 423,394. Of the total population, Whites comprised 323,171—76.3%; African-Americans comprised 62,476—14.8%; and Hispanics comprised 17,632—4.2%.

46.    According to the 2000 U.S. Census, Mount Holly Township's total population was 10,728. Of the total population, Whites comprised 7,101—66.2%; African-Americans comprised 2,231 —20.8%; and Hispanics comprised 942 —8.8%.

47.    The residential section of the Gardens redevelopment area corresponds approximately to Blocks 1000, 1001, 1003 and 1009 of U.S. Census Tract 7026.04., Burlington County, New Jersey.

48.    Approximately 1,031 residents lived within the Census Blocks corresponding to the residential section of the Gardens redevelopment area. Within the residential section of the Gardens redevelopment area, Whites comprised approximately 203 residents—only 19.7%, compared to 475—46.1% —African-American residents and 297—28.8%—Hispanic residents.

49.    Thus, African-American and Hispanic residents comprised the overwhelming majority—nearly 75%—of the residents living in the Gardens redevelopment area.

50.    Further, according to the 2000 U.S. Census, the concentration of African-American and Hispanic residents in the Gardens was the highest of any neighborhood in Mt. Holly Township and much higher compared to Burlington County, while the concentration of Whites was comparatively much lower.

   a.   46.1% of the Gardens redevelopment area was African-American, compared to only 20.8% for Mt. Holly Township and 14.8 % for Burlington County.

   b.   28.8% of the Gardens redevelopment area was Hispanic, compared to only 8.8% for Mt. Holly Township and only 4.2% for Burlington County.

   c.   Only 19.7% of the Gardens redevelopment area was non-Hispanic, White, compared to 66.2% for Mt. Holly Township and was 76.3% for Burlington County.

d.  In addition, approximately 31.5% of Mt. Holly Township's entire Hispanic population and approximately 21,3% of Mt. Holly Township's entire African-American population lived within the Gardens redevelopment area, compared to only 2.9% of the entire non-Hispanic, White population.

51.  Further, according to the 2000 U.S. Census, the median household income in the Gardens redevelopment area was only $30,104, while the median income for the Township was $43,284, and the median income of Burlington County was $58,608.

52.  According to the 2000 Census, in Census Tract 7026.04 containing the Gardens, the housing characteristics were as follows:

a.  50% of the households in Census Tract 7026.04 were renters, and 50% were homeowners.

b.  31% of the African-American households were homeowners while the percentage in the entire Township was 13%, and the percentage in the County was 11%.

c.  17% of the Hispanic households were homeowners while the percentage in the entire Township was 8%, and the percentage in the County was 2%.

d.  81% of the owner-occupied households in Census Tract 7026.4 had lived in their homes for at least 9 years, while 72% of the renter-occupied households had lived in their homes for at least 5 years.

e.  The median cost of homeownership for owner-occupied homes with mortgages in Census Tract 7026.04 was only $969 a month, compared to $1,536 for the Township and $1,393 for the County.

53.  According to the 2000 Census, the Gardens neighborhood therefore had among the highest rates of African-American and Hispanic home ownership in Burlington County.

54. Despite the lower incomes of the Gardens' households, the community is remarkably stable and has many longtime residents.

55. Residents have a strong sense of community and like that it is racially and ethnically diverse.

56. Many Gardens residents have family and friends living in the neighborhood.

57. Residents enjoy the convenient location of the Gardens and its proximity to schools, employment, businesses, and downtown.

58. The stability of the Gardens neighborhood is attributable in part to lower housing costs than that of Mt. Holly and Burlington County, making the Gardens more affordable for lower income households.

59. According to a more recent survey conducted by Triad in July 2006, the average monthly homeowner cost being paid in the Gardens is $445 and the average rent is $696.

60. In addition, many longtime homeowners of the Gardens, particularly seniors, paid off their mortgages in full and can afford to keep their homes, although they would not be able to purchase much higher-priced homes in the current real estate market on their present incomes.

61. According to a survey conducted by planners commissioned by the Township in 2000, 90% of the households in the Gardens had annual incomes below $40,000, 43% earned between $20,000 and $40,000, and nearly half—47%—earned less than $20,000.

**C. Redevelopment Activities Before 2002**

62. For almost thirty years, community members and Mt. Holly Township have engaged in various planning initiatives to improve living conditions in the neighborhood.

63. These planning initiatives included a community-led effort in the 1980's that resulted in development of a strategy to increase the homeownership rate through targeted

property acquisition and rehabilitation; however, this strategy was never adopted by the Township.

64.     Another planning initiative was a housing rehabilitation program known as "Mt. Holly 2000." Through this program, ten homeowners in the Gardens obtained grants and loans to fix up their properties.

65.     The Township subsequently decided not to support such revitalization efforts. It instead began to plan for a sweeping redevelopment of the entire community that would involve acquisition and demolition of most or all of the Gardens homes.

66.     In 2000, the Township began to purchase properties in the Gardens and leave them vacant

67.     In 2000, the Council also commissioned a private firm, THP, Inc., to investigate whether the Gardens neighborhood met the criteria of an "area in need of redevelopment" within the meaning of N.J.S.A. 40A:12A-1 et. seq.

68.     In November 2000, THP, Inc. prepared a report entitled "Redevelopment Area Determination Report" ("2000 Redevelopment Report"), which it presented to the Council.

69.     As part of the preparation of this 2000 Redevelopment Report, the planners conducted a survey of the Gardens residents.

70.     The survey demonstrated that when questioned about the Township's plans for redevelopment, residents were concerned about displacement and that more than 2/3 of the residents stated that they would prefer to remain living in the Gardens.

**D.  Redevelopment Planning and Formal Adoption of Redevelopment Plan**

71.     The Township adopted a Master Plan pursuant to the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., dated April 13, 2000.

72.     The Master Plan set forth certain goals, which included improving the qualify of Mount Holly's housing stock, upgrading the Gardens Area, and utilizing the LRHL to Mount Holly's best advantage.

73.     With regard to the upgrade of the Gardens area, the Master Plan stated that one objective of this Master Plan is to upgrade the quality of units and the character of area, and that measures should be taken to reduce the overall density in the Gardens Area, to rehabilitate deteriorated units, and to provide additional amenities.

74.     In the land use plan element, the Master Plan characterizes the Gardens as one of two "high density areas" containing some deteriorated units, high proportion of rental properties, and with overcrowding an identified problem. The Master Plan recommended "redevelopment/revitalization" to allow for reduction of density, modernization of housing stock, and improvement to overall perception of the area.

75.     On July 30, 2002, Council passed Resolution No. 2002-166 authorizing the Township's Planning Board to undertake a preliminary investigation and to hold a public hearing to determine whether the Gardens neighborhood was an area in need of redevelopment.

76.     The Planning Board subsequently received a report prepared by THP, Inc. entitled "Redevelopment Area Determination Report," dated September 3, 2002.

77.     The September 3, 2002 Redevelopment Area Determination Report was almost identical to the 2000 Redevelopment Report prepared for Council.

78.     On September 16, 2002, the Planning Board held the first public hearing on the question whether the Gardens should be designated as a redevelopment area.

79.     On October 21, 2002, the Planning Board passed Resolution No. 2002-10, adopting the findings and conclusions of the 2002 Redevelopment Report and recommending that the

Township Council designate the Gardens neighborhood as a "redevelopment area" within the meaning of N.J.S.A. 40A:12A-1 et. seq.

80. On October 28, 2002, the Council passed Resolution No. 2002-217, accepting the factual findings of the 2002 Redevelopment Report, accepting the Planning Board's recommendations and formally designating the Gardens neighborhood as an area in need of redevelopment under N.J.S.A. 40A:12A-1 et seq.

81. Resolution No. 2002-217 did not state or otherwise indicate that by designating the Gardens neighborhood as an area in need of redevelopment, homes in the Gardens would be demolished.

82. At the Planning Board hearing and at the Council meeting, Township officials misled Residents by telling them that including their properties in an area in need of redevelopment did not mean that the Township would take their properties by eminent domain.

83. In April 2003, the Council publicly released a document entitled "The Gardens Area Redevelopment Plan" ("Gardens Redevelopment Plan").

84. The Gardens Redevelopment Plan provided for the following:

    a. Total demolition of all the homes in the neighborhood and relocation of all the residents.

    b. Building 180 new housing units.

    c. No construction of any affordable housing units.

    d. No guarantee that any new housing in the redevelopment community would be made available for Gardens residents either before or after displacement.

    e. No guarantee that any new housing in the redevelopment community would be realistically affordable for Gardens residents.

      f.   Building only 30 rental units, available only to seniors.

85.    The proposed 180 new units would be much more expensive than existing homes; therefore, the plan would permanently displace current residents who are predominately low-income.

86.    On August 11, 2003, the Township held a public hearing on the adoption of the Gardens Redevelopment Plan.

87.    Over 100 residents appeared before the Council protesting against the proposed redevelopment plan and the demolition of their homes.

88.    Among the objections raised by the residents were the following:

      a.   They feel a strong sense of community and have pride in the community. Many are long-term residents. They feel surrounded by family and friends. They like that it is racially and ethnically diverse.

      b.   Many residents are low-income. Some had been homeless in the past. They are fearful that they will not be able to afford the new units that were being planned for construction and that they will not be able to find other housing in the area they could afford.

      c.   Some residents, including some elderly homeowners, have paid off their mortgages. They are afraid that if they lose their homes they will never be able to purchase another one.

89.    Also on August 11, 2003, Plaintiff CIA submitted to the Township Council detailed written objections to the Gardens Redevelopment Plan with proposed alternatives to demolition of the residents' homes, including that the Gardens Redevelopment Plan was drafted without meaningful input from the residents and in disregard of the residents' needs; that it discriminated

against African-American and Hispanic residents on the basis of race and ethnicity; that it did not realistically provide for housing that was decent and affordable for the residents, either as to units to be newly constructed in the Gardens area or replacement housing elsewhere in Mt. Holly Township or Burlington County; and that it would cause severe hardship by forcing most residents, many of whom have lived in the Gardens for many years, to lose their homes and move out of their community.

90.    On September 8, 2003, the Township Council passed Ordinance No. 2003-12 adopting the Gardens Redevelopment Plan as originally proposed.

91.    On October 23, 2003, Plaintiffs CIA and 35 individual residents filed an action in the Superior Court of New Jersey, Law Division, Docket No. BUR-L-003027-03, challenging the designation of the Gardens as an area in need of redevelopment and the adoption of the Gardens Redevelopment Plan under state law and on civil rights and constitutional grounds.

92.    In February 2005, the Township Council directed the Planning Board to consider amending the Gardens Redevelopment Plan.

93.    On February 21, 2005, the Planning Board held a public hearing concerning a revised redevelopment plan called the West Rancocas Redevelopment Plan (WR Redevelopment Plan), which encompassed the Gardens neighborhood and increased the area for commercial redevelopment.

94.    The WR Redevelopment Plan proposed the following:

    a.    228 new residential units.

    b.    Permitted residential uses increased up to 50% for two-family dwellings, up to 33% for townhouse/senior apartment combination dwellings, and

up to 33% for townhouses.  The permitted uses; however, did not include any multifamily rental units.

c.   Demolition of existing homes and new construction of the above permitted uses.

d.   Possible rehabilitation of existing units, but rehabilitation was purely optional with no specified amount or percentage of existing residential units that were to be rehabilitated.

e.   Only 10% of the 228 dwelling units—a total of 23—to be affordable housing units, with the remaining 205 units to be market rate units.

f.   Commercial development in the are adjacent to the Mt. Holly Bypass Road on the western edge of the redevelopment area.

95.     Many Gardens residents appeared and spoke at the Planning Board hearing on February 21, 2005, raising the same objections to the proposed WR Redevelopment Plan that they had raised concerning the Gardens Redevelopment Plan.

96.     Also on February 21, 2005, a planning expert, Alan Mallach, FAICP, PP, submitted a report and testified on behalf of the residents regarding the proposed WR Redevelopment Plan.

97.     In the report, Mr. Mallach opined that the rehabilitation option under the Plan was at best illusory and that given the lower-income status of most of the Gardens residents, very few if any of the families could afford the 205 market rate units.

98.     Mr. Mallach also testified that the Township could improve the Gardens community using much less drastic alternatives than the large-scale acquisition and demolition called for the WR Redevelopment Plan.

99.     In addition, Plaintiff CIA submitted detailed written comments to the Planning Board on February 21, 2005, raising numerous objections and recommendations, including: that the WR Redevelopment Plan should mandate as an overriding goal that existing homes be rehabilitated instead of demolished to avoid displacement of residents; that the WR Redevelopment Plan should permit multifamily rental housing—which constituted at least half of the existing residential units in the Gardens—among the permitted uses; that the WR Redevelopment Plan unlawfully discriminated against African-American and Hispanic residents on the basis of race and ethnicity; and that the WR Redevelopment Plan's limit of 23 affordable housing units was a misapplication of the new growth share regulations promulgated by the New Jersey Council on Affordable Housing ("COAH") and was otherwise contrary to the general welfare under the New Jersey Constitution.

100.    At the conclusion of the public hearing on February 21, 2005, the Planning Board passed a resolution recommending that the Council adopt the WR Redevelopment Plan, with the recommendation to increase the townhouse permitted use to up to 75% of the total 228 residential units.

101.    The Planning Board did not recommend adoption of any amendments addressing the concerns raised by the residents and plaintiffs.

102.    On March 14, 2005, the Township Council held a public hearing on the adoption of the WR Redevelopment Plan.

103.    Many residents appeared and voiced similar concerns against the WR Redevelopment Plan as stated before the Planning Board.

104.    Plaintiffs also submitted written comments similar to those presented to the Planning Board.

105.     At the conclusion of the hearing, the Township Council adopted Ordinance 2005-07, adopting the WR Redevelopment Plan.

106.     The Township Council disregarded all of the input it received from the Gardens residents and failed to address the residents' objections and concerns.

107.     The Township officials made false, misleading, and/or inaccurate statements in response to public comments regarding the designation of the Gardens community as an area in need of redevelopment and regarding the adoption of the Gardens Redevelopment Plan and the WR Redevelopment Plan.

108.     The Township also took other actions to avoid informing the residents of its plans and to minimize public comment and participation in the redevelopment process.

109.     CIA and the other plaintiffs in the state court litigation amended their complaint to allege that the adoption of the WR Redevelopment Plan was in violation of state redevelopment law, civil rights laws, and the federal and state constitutions.

110.     On April 17, 2005, the Superior Court, the Hon. John Sweeney, held a bench trial on the issues of whether the Gardens met the statutory criteria of a redevelopment area and whether the WR Redevelopment Plan complied with the requirements of LRHL. On May 5, 2005, the court ruled in favor of the Township and entered judgment dismissing the prerogative writ claims.

111.     On August 30, 2005, Judge Sweeney granted the Township summary judgment dismissing without prejudice the residents' civil rights and constitutional claims upon finding that they were not ripe for adjudication.

112.     On July 5, 2007, the New Jersey Superior Court, Appellate Division, affirmed the rulings of the trial court.  On December 11, 2007, the New Jersey Supreme Court denied the

residents' petition for certification, and on February 5, 2008, the New Jersey Supreme Court denied the residents' motion for reconsideration.

113.    The Gardens redevelopment project is the only redevelopment initiative in Mt. Holly Township during the last 10 years that calls for large-scale demolition of homes and displacement of residents.

114.    The Township conducted a reexamination of its Master Plan in June 2007.

115.    The Master Plan Reexamination repeats the discussion of the Gardens in the Master Plan, and notes that the Township is improving the Gardens Area by declaring it a redevelopment area and adopting the WR Redevelopment Plan, which includes residential and non-residential properties, as recommended in the Master Plan.

116.    The Reexamination includes a section of specific recommendations, which incorporate the specific proposals set out in the WR Redevelopment Plan for Residential, Commercial, Limited Industrial, and open space uses.  The Reexamination does not propose any changes to the Master Plan with regard to the Gardens Area.

**E.  Township's and Redevelopers' Implementation of the Redevelopment Plan**

**1.  Acquisition of Properties**

117.    By 2002, at the time the Gardens Plan was being considered by the Planning Board and Council, the Township had acquired a total of 20 units, which it had intentionally left vacant and boarded up rather than attempting to renovate or sell them.

118.    On November 10, 2003, the Township Council enacted Ordinance No. 2003-37, authorizing Township officials to negotiate and acquire all of the properties located in the Gardens redevelopment area by voluntary sale or, if necessary, by condemnation, at a price not to exceed fair market value.

119.     After adoption of the WR Redevelopment Plan in 2005, the Township increased its efforts to acquire homes in the Gardens.

120.     In or about March 2005, the Township purchased the 62 rental properties from Fry Properties for approximately $53,000 per unit totaling $3.27 million.

121.     In or about April 2006, the Township obtained an appraisal report, which determined that the value of a one-bedroom house in the Gardens was $32,000, a two-bedroom house was $39,000, and a three-bedroom house was $49,000.

122.     Since 2006, the Township has purchased numerous homes at prices ranging from $32,000 to $49,000, except for two purchases at $64,000 and one purchase at $81,000 for properties that contained two units converted into one larger home.

123.     By December 2007, the Township had acquired a total of 219 residential units out of the 329 original homes in the Gardens redevelopment area. Most of these residential units had been occupied by tenants or homeowners before the Township acquired them. The Township had demolished 42 of its acquired units, and kept 165 of the remaining 177 units vacant and boarded.

124.     Because the Township had not re-rented or re-sold its units upon acquisition, the Township's acquisitions increased the overall vacancy rate in the Gardens to nearly 65%.

125.     Since December 2007, the Township has demolished an additional 31 residential units, for a total 73 demolished units,

126.     The only measures the Township has taken to secure its vacant properties has to put particle board panels on the windows and to plaster large orange "no trespassing signs" on them.

127.     The Township has not adequately secured or maintained the houses and yards of the properties it owns, allowing these properties to deteriorate and become vandalized by trespassers.

128.     The vacant Township-owned properties have caused and are continuing to cause a severely blighting and deleterious effect on the Gardens neighborhood, created risk of infestation, fire hazards, and mold, and   encouraged further disinvestment in the community.

129.     The Township and Redevelopers have made and are continuing to make offers to Gardens property owners to purchase units for the prices of $32,000 for a one-bedroom house, $39,000 for a two-bedroom house, and $49,000 for a three-bedroom house.

130.     The Township recently initiated the eminent domain process against one absentee property owner to acquire additional properties.

131.     On April 12, 2008, the Township Council introduced and passed on first reading Ordinance 2008-12. The Ordinance states that the Township is or will be the owner of all of the properties in the redevelopment area, and authorizes the Mayor, and/or the Township Manager and/or Township Clerk to negotiate and execute a Purchase and Sale Agreement, and all other necessary documents, between the Township and Redevelopers for all of the properties for the minimum purchase price of $9 million and to execute any documents necessary to effectuate the sale, including any documents that may be required for Eminent Domain proceedings.

**2.  Selection of Redevelopers**

132.     On February 15, 2006, the Township executed a Redevelopment Agreement with Defendant Keating.

133.      In or about March 2006, Keating hired Triad to conduct the relocation activities associated with the WR Redevelopment Plan.

134.     Pursuant to Exhibit C of the Redevelopment Agreement, Keating was to form a single purpose limited liability corporation with another redeveloper, Pennrose Properties, with Keating assigning its rights and obligations under the Redevelopment Agreement to the newly formed LLC and maintaining majority ownership.  Upon information and belief, the single purpose limited liability corporation described in Exhibit C of the Redevelopment Agreement has not yet been formed and is presently not in existence.

135.     Keating subsequently began to take various actions to move the redevelopment project forward including obtaining a survey; negotiating on behalf of the Township for the acquisition of a number of properties; meeting with various professionals such as planners, architects, and engineers; and submitting applications for permits and approvals.

136.     On February 23, 2007, the Redevelopers became responsible for property management of the Township-owned properties.

**3.  Relocation of Gardens Residents**

137.     On September 28, 2006, the Township submitted a Workable Relocation Assistance Plan ("Relocation Plan") to the New Jersey Department of Community Affairs.

138.     The Relocation Plan provided the following:

a.     Proposed relocation of all current Gardens residents.

b.     A "Right of First Opportunity" for residents to return to the Gardens area after the redevelopment project is completed.

c.     No provision that any replacement units realistically affordable to the residents would be created in the Gardens

d. No provision that any replacement units realistically affordable to the residents would be created in any other areas in the Township or in the surrounding region.

e. All residents on August 1, 2006, would be eligible for relocation assistance.

f. Qualified resident homeowners would be eligible, in addition to the $15,000.00 required by N.J.A.C. 5:11-3.7(a), for a $20,000 no-interest loan payable if and when the relocated homeowner sold the replacement dwelling.

g. Qualified tenants who moved into non-subsidized rental units were eligible for up to $4,000.00 in assistance as provided by N.J.A.C. 5:11-3.5 and additional assistance up to $3,500.00.

h. However, homeowners or tenants who used relocation funds to move out the Gardens would not be eligible for additional relocation funds to return to the Gardens if and when any affordable units were ultimately constructed.

139. In November 2006, the Township received notification from the Department of Community Affairs that the Relocation Plan was approved.

140. On November 15, 2006, Triad opened an office in the Gardens to conduct relocation activities.

141. Triad staff began to send letters and notices to tenant households asking them to come in for interviews.

142.    After assessing their housing needs, Triad staff started to make efforts to locate housing for these households outside of the Gardens.

143.     The Township did not provide any relocation assistance to residents who moved out of the Gardens prior to November 2006.

144.    Since the Relocation Plan was approved in November, 2006 through January, 2008, the Township paid relocation funds to 62 families to move out of the Gardens.

145.    Of these 62 households, 43, or 69%, were relocated outside of Mt. Holly.

**4.  Demolition of Units**

146.    The Township and Redevelopers have and are continuing to dismantle the Gardens community by demolishing homes in the Gardens.

147.    As of May 2008, the Township has demolished a total of 73 residential units, most of which were previously occupied by tenants or homeowners.

148.    Although the Township claimed that the demolitions of the houses were necessary for health and safety concerns, the units were generally structurally sound, capable of rehabilitation, and did not pose a threat to public safety.

149.    To the extent the units were in poor condition and being used by trespassers, this was a result of the Township's failure to take measures to adequately secure and maintain them.

**5.  Reduction in Municipal Services**

150.    Starting in 2000, before the Township even initiated the formal redevelopment planning process, the Township itself began to create blighted conditions in the Gardens.

151.    Starting in 2000 and continuing during the course of the redevelopment process, the Township neglected the needs of the Gardens neighborhood by failing to apply for and utilize available funding for community improvements and housing rehabilitation.

152.     From January 1999 to the present, the Township entered into regional contribution agreements pursuant to the New Jersey Fair Housing Act, N.J.S.A. 52:27D-301 *et seq*., with the municipalities of Moorestown, Hainesport, and Westhampton, with the Township receiving more than $4 million to rehabilitate 218 residential units occupied by low and moderate income households within Mount Holly.

153.     The Township has not at any time allocated or used any funds from the regional contribution agreements to rehabilitate homes in the Gardens.

154.     The Township failed to utilize a $25,000 grant from the New Jersey Department of Community Affairs earmarked for social, educational, and recreational programs for residents at the Gardens community center and in July, 2003 was forced to return the unspent funds.

155.     In 2004, the Township removed the only playground equipment in the Gardens and refused to replace it.

156.     The Township also failed to conduct proper code enforcement, prompt trash removal, adequate policing, and other basic services needed by the Gardens residents.

157.     The Township twice used its vacant properties in the Gardens to conduct live police tactical training, bringing in numerous police officers and vehicles into the Gardens in the early morning hours, without providing advance notice to residents in the neighborhood.

158.     The Township's failure to provide adequate and proper municipal services has negatively impacted upon the community and decreased the quality of life for residents.

159.     In spite of the Township's actions, Gardens residents, through their own efforts, continued to combat significant deterioration of their neighborhood and tried to preserve their quality of life.

**F.  Continued Planning and Changes to WR Redevelopment Plan**

160.     On March 9, March 23, and April 5, 2006, the Redevelopers held three meetings with Gardens residents.

161.     The residents participating in these meetings thought that the purpose of the meetings was to consider revisions to the redevelopment plan.

162.     At all three of the meetings, Gardens residents gave input about the redevelopment process and stated that they did not want to lose their homes or to be moved out of the Gardens.

163.     The Gardens residents presented to the Redevelopers a list of proposals for revising the WR Redevelopment Plan, which included a guarantee of affordable replacement units for all residents to be displaced who wished to remain in the Gardens.

164.     At the third meeting, resident surveys were distributed.

165.     In July of 2006, Triad completed the resident survey process. 169 households responded, including 107 tenant households and 60 homeowners.

166.     The Triad survey showed that 120 out of the 169 families were interested in either purchasing or renting a new home in the Gardens, only 64 families were interested in purchasing or renting outside of the Gardens, and only 8 households were interested in selling their property.

167.     In or about October 2006, the Township and Redevelopers notified the residents of the completion of the Relocation Plan.

168.     The Relocation Plan stated that 560 units were being planned for the redevelopment area.

169.     The Township and Redevelopers have not given residents any other information about any proposed or adopted changes, revisions, or amendments to the WR Redevelopment Plan.

170.     During the period between February of 2006 and September 2007, the Redevelopers prepared and revised approximately eight conceptual plans for the redevelopment area, referred to by the Township as "concept plans".

171.     Since the adoption of the WR Redevelopment Plan, the Township Council has conducted many discussions during closed executive session.

172.     The Township did not provide any public notice regarding the concept plans that were being prepared by the Redevelopers.

173.     The Township did not conduct any public meetings regarding the concept plans.

174.     Upon information and belief, the Township did not refer any of the concept plans or any other proposed amendments to the WR Redevelopment Plan to the Planning Board for review.

175.     On September 10, 2007, during a Council meeting, Township Manager Hoffman advised the Council and the public that the Redevelopers should be coming to present a revised plan to Council in approximately two weeks and that hopefully after the plan is approved the Redevelopers would be coming forth with funding to offset the 2008 budget.

176.     The Township Manger's statement on September 10, 2007 was the only time that that the Township discussed the Redevelopers' concept plans during a Council meeting that was open to the public.

177.     The most recent concept plan proposes construction of 203 market rate and 25 COAH income restricted apartments and 261 market rate and 31 COAH townhouses, totaling 520 housing units.

178.     The Township Council scheduled an executive session to discuss and approve the concept plan, without adopting a Resolution pursuant to the Open Public Meeting Act, N.J.S.A.

179.    On or about September 24, 2007, the Township Council approved the concept plan during a closed executive session.

180.    The Township Council approved the concept plan without any public notification about the concept plan or any opportunity for public input.

181.    The Township Council has not provided any information to the public about the actions taken during the executive session when the Township discussed and approved the concept plan.

182.    The Township has not taken any action to formally amend the WR Redevelopment Plan pursuant to the LRHL, N.J.S.A. 40A:12A-7.

183.    The redevelopment project for the Gardens, as amended through the approval of the concept plan, is inconsistent with the Township's Master Plan and Reexamination.

184.    The Township has not followed the procedures set forth in the LRHL, N.J.S.A. 40A:12A-7, for review and adoption of a redevelopment plan that is not consistent with the Master Plan.

**G.  Failure to Provide Affordable Replacement Units**

185.    The Township estimates that the prices of the new townhouses to be built in the redevelopment area will range from $200,000 to 275,000 and that apartments will rent at approximately $1.65 per square foot, with a one-bedroom unit renting for $1,230 per month.

186.    Nearly all Gardens residents cannot afford to purchase or rent the new units.

187.     The affordable housing provision in the WR Redevelopment does not constitute adequate replacement housing because it proposes to create only 23 affordable units, without any guarantee that even these 23 units would be realistically affordable or available to current or displaced Gardens residents.

188.     The new concept plan approved by the Council on September 24, 2007, also does not provide for adequate replacement housing because it proposes to replace the 329 Gardens homes with only 56 affordable units, without any guarantee that even any of these 56 units would be realistically affordable or available to Gardens residents.

**H.  Harm to Residents and CIA by Township's and Redeveloper's Actions**

189.     By acquiring and vacating properties, failing to maintain the properties it owns, reducing municipal services, demolishing units, and creating increasingly blighted conditions in the Gardens, the Township and Redevelopers have interfered and are continuing to severely interfere with the Gardens residents' use and enjoyment of their property and to otherwise injure Gardens residents.

190.     Gardens residents risk losing their financial investments in their homes if they continue to make improvements or repairs.

191.     Because the Township's and Redeveloper's actions have created severely blighted conditions and greatly lowered property values, and because of the imminent threat of condemnation, Gardens residents are unable to sell their home on the private market at a price that provides just compensation and that would enable them to find alternate comparable housing.

192.     The Township's proposed prices for purchase of the properties also do not constitute just compensation and are inadequate to enable residents to purchase decent, safe, and affordable comparable replacement housing.

193.     Because of the Township-caused increased vacancy rate, proliferation of abandoned home, and ugly appearance of the neighborhood, Gardens residents increasingly fear for their security and safety, experience pest infestation and mold, cannot enjoy spending time in their yards and open areas, and are embarrassed to have family and friends visit.

194.     Gardens residents have experienced and are continuing to experience great stress, anxiety, and grief because of their fear of losing their homes and their strong community ties and becoming unable to find adequate affordable replacement housing.

195.     Many former Gardens residents have moved out of the Gardens community because the community had become such an undesirable and unsafe place to live and because eventual eviction or condemnation by the Township appeared inevitable.

196.     Many former Gardens residents who moved out of the Gardens under threat of condemnation or eviction have not been able to find comparable replacement housing at locations as desirable as the Gardens community and have been forced to live under worse conditions and/or pay higher housing costs.

197.     The Township's and Redeveloper's actions have harmed CIA by impeding its ability to organize residents and operate effectively as a representative organization.

198.     The Township's and Redeveloper's concerted actions to effectuate the redevelopment of the Gardens between March of 2005 and the present, including the acquisition, vacation, and demolition of properties, the relocation of residents, the creation of severely blighted living conditions, the failure to provide affordable replacement housing, and the injury

suffered by the Residents as a result of these actions render ripe for adjudication the civil rights and constitutional claims that were dismissed by the state court without prejudice for lack of ripeness.

## FIRST COUNT

## UNLAWFUL DISCRIMINATION UNDER THE FAIR HOUSING ACT, 42 U.S.C. § 3601 et seq.

199. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

200. By the actions described above, the Township and Redevelopers have violated and continue to violate the rights of plaintiffs under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and implementing regulations by:

    a. Making unavailable or denying dwellings to persons because of race, color and national origin, in violation of 42 U.S.C. § 3604(a) and implementing regulations;

    b. Discriminating on the basis of race, color or national origin in the terms, conditions or privileges of services or facilities in connection with the sale or rental of a swelling in violation of 42 U.S.C. § 3604(b) and implementing regulations; and

    c. Coercing, intimidating, threatening or interfering with any person's exercise of his or her rights protected under 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

201. The Township's and Redevelopers' actions, practices and policies, as described above in the Complaint, have had and continue to have a substantial adverse, disparate impact on African-American and Hispanic households in violation of the Fair Housing Act, 42 U.S.C. § 3604 (a) and (b).

a.  The Township's and Redevelopers' actions, practices and policies will dismantle and destroy the Gardens, which is predominately African-American and Hispanic and has the most concentrated populations of African-American and Hispanic persons in the Township.

b.  The Township's and Redevelopers' actions, practices and policies will substantially and disproportionately displace African-American and Hispanic households from the Gardens and from Mt. Holly Township, who are mostly lower and moderate income and who cannot afford the homes that will be constructed in the Gardens or existing housing in the local housing market.

c.   The Township's and Redevelopers' actions, practices and policies will destroy hundreds of residential homes affordable to lower and moderate income African-American and Hispanic Households without providing replacement housing that is affordable to most such households.

202.   In addition, the Township's actions demonstrate that Township officials acted with intent to discriminate, as follows:

a.  The Township knew that the residents of the Gardens were predominately African-American and Hispanic, and that the Gardens community was one of the most concentrated populations of African-American and Hispanic persons in the Township.

b.  The Township decided to abandon efforts to rehabilitate the Gardens and instead initiate a redevelopment project that would require the forcible relocation of all or most Gardens residents.

c.  Even before adoption of a redevelopment plan, the Township took actions to create blighted conditions in the Gardens and to drive down the costs of property acquisition and relocation.

d.  The Township knew or should have known that the predominately African-American and Hispanic Gardens residents would be unable to afford the proposed new housing to be constructed under the Redevelopment Plan.

e.  The Township also knew or had reason to know that there was an inadequate supply of affordable housing in the area and especially within the Township.

f.   The Township knew or had reason to know that Gardens residents would find few affordable housing options within Mt. Holly Township and would be likely to be forced to move out to other municipalities.

g.  The Township knew or should have known that implementation of the WR Redevelopment Plan would therefore result in decreasing the numbers of African-American and Hispanic residents in Mt. Holly.

h.  The Township knew or should have known that the African-American and Hispanic residents would experience severe hardship from being forcibly relocated and would have great difficulty in securing adequate replacement housing.

i.  The Township officials also knew or had reason to know that the redevelopment would thus cause severe harm to Gardens residents, as they would lose their homes and their community and have great difficulty in finding decent, safe, affordable replacement housing in Mt Holly Township and the surrounding region.

j.  The Township officials adopted and began to implement the Gardens Redevelopment Plan and the WR Redevelopment Plan with the intent to displace current Gardens residents and force a significant number of them to move out of Mt Holly.

k.  The Gardens community, which has the highest concentration of African-American and Hispanic residents in the Township, is the only community the Township has targeted for large-scale displacement and relocation.

l.  The Township deviated from procedural and substantive norms by violating the procedures mandated by the LRHL, N.J.S.A. 40A:12A-1 *et seq.*, and the OPMA, N.J.S.A. 10:4-12, as described more fully under the  Seventh and Eighth Counts of the Complaint.

m.  The Township deviated from procedural and substantive norms by adopting revisions to the WR Redevelopment Plan that are inconsistent with the policies and priorities of the Township's Master Plan.

n.  The Township knowingly and deliberately created adverse and unsafe living conditions at the Gardens by failing to provide adequate essential services, by purchasing properties and leaving them in vacant and deteriorated condition, by demolishing structurally sound units that were capable of rehabilitation, by failing to obtain and expend funds for community improvements, and by failing to support community-led initiatives for improving housing and quality of life in the Gardens.

o.  The Township intentionally took action to drive down property values and its acquisition and relocation costs, improperly assessed the value of the properties, and failed to make available to the predominately African-American and Hispanic Gardens residents just compensation and adequate relocation assistance.

p.  The Township's prior history regarding its treatment the Gardens and its adoption of the WR Redevelopment Plan despite knowledge of its discriminatory effects demonstrate that the Township intended to and did discriminate against plaintiffs on the basis of race, color, and national origin.

q.  The Township intentionally took action it knew or should have known would coerce, intimidate, threaten and interfere with residents' rights to rent, own, sell, buy and otherwise exercise their rights protected under the 42 U.S.C § 3604 by coercing residents to sell their property to the Township, by leaving the properties it purchased vacant, poorly maintained and attractive to vandalizers and trespassers, by demolishing units attached to units it knew to be occupied by residents, thus frightening the residents and structurally damaging their units, by conducting live police weapons and tactics team trainings in vacant units in view of residents and their children and by sending residents notices of relocation interviews, that they knew or should have known would be coercive, intimidating, threatening and would interfere with residents' rights.

203. By the actions described above, the Township has intentionally, knowingly, and continuously discriminated against African American, Hispanic and other residents of the Gardens neighborhood because of their race, color or national origin, or the racial, color or national origin composition of their neighborhood, in violation of the Fair Housing Act.

204. The Township have intentionally, knowingly, and continuously engaged in the practices described above that have a predictable discriminatory effect with the intent of denying equal housing opportunities to Residents.

205.   The actions of the Township and Redevelopers in adopting, revising, and implementing the redevelopment plans for the Gardens have caused and are continuing to cause severe harm to the low and moderate income, predominately African-American and Hispanic Gardens residents.

206.  The acts and conduct of the Township and Redevelopers complained of above have caused and continue to cause substantial injury to each of the individual plaintiffs and to plaintiff Citizens in Action.

## SECOND COUNT

### VIOLATION OF CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1982

207.  Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

208.  The Civil Rights Act of 1866, as amended, 42 U.S.C. § 1982, guarantees that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

209.  By seeking to demolish all 329 homes within the Gardens neighborhood and proposing to construct much more expensive replacement housing units unaffordable to most African-American and Hispanic households living in the Gardens, the Township is intentionally seeking to deprive the plaintiffs and other African-American and Hispanic residents of the same right to inherit, purchase, lease, sell, hold, and convey real and personal property as is enjoyed by white citizens, in violation of to 42 U.S.C. § 1982.

210.  The Township has otherwise intentionally discriminated against Residents and other African-American and Hispanic residents of the Gardens neighborhood as described under the First and Third Counts of this Complaint.

211.  The Township has thus violated plaintiffs rights guaranteed under 42 U.S.C. §1982.

## THIRD COUNT

### VIOLATION OF EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. § 1983

212.  Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

213.  The Township has intentionally discriminated against plaintiff Residents and other African-American and Hispanic residents of the Gardens neighborhood as described under the First and Second Counts of this Complaint.

214.  The Township has, under color of state law, intentionally deprived the Residents of their rights to equal protection under the law as guaranteed to them by the Fourteenth Amendment of the United States Constitution because of their race, ethnicity and/or national origin, actionable pursuant to 42 U.S.C. §1983.

## FOURTH COUNT

### VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1 *ET SEQ.*

215.  Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

216.  N.J.S.A. 10:5-12.5 of the New Jersey Law Against Discrimination states that "[i]t shall be unlawful discrimination for a municipality, county or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof, to exercise the

power to regulate land use or housing in a manner that discriminates on the basis of race, creed, color, national origin, ancestry, marital status, familial status, sex, nationality or handicap"

217. As set forth in Counts One through Three, the Township has taken actions that are causing and will continue to cause the disproportionate displacement and forced removal of African-American and Hispanic households, that have reduced and will continue to reduce the overall number of African-American and Hispanic households living in Mt. Holly Township, that discriminate against African-American and Hispanic households living in the Gardens neighborhood in the provision of services or facilities in connection with housing, that will create barriers for African-American and Hispanic households to remain in and move into Mt. Holly Township, and that thus have a discriminatory impact upon the basis of race, color and national origin and perpetuate segregation within Mt. Holly Township in violation of N.J.S.A. 10:5-12.5.

218. In addition to violating the New Jersey Law Against Discrimination due to discriminatory impact, the Township has intentionally discriminated against plaintiffs and other African-American and Hispanic households living in the Gardens neighborhood contrary to N.J.S.A. 10:5-12.5 as described under the Counts One through Three of this Complaint.

219. In addition, as set forth previously herein, the Township and Redevelopers have otherwise discriminated against African-American and Hispanic households in the provision of housing in violation of N.J.S.A. 10:5-4 of the LAD.

220. The Township and Redevelopers have thus unlawfully discriminated against plaintiffs in violation of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12.5 of the New Jersey Law Against Discrimination.

**FIFTH COUNT**

**VIOLATION OF EQUAL PROTECTION CLAUSE OF ARTICLE I,
PARAGRAPH 1 OF NEW JERSEY CONSTITUTION**

221. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

222. The Township has intentionally discriminated against plaintiff Residents and other African-American and Hispanic residents of the Gardens neighborhood by initiating and implementing a redevelopment project that forcibly displaces these residents as described under the First, Second, Third, Fourth, and Fifth Counts of this Complaint.

223. The Township, under color of state law, has intentionally deprived the plaintiffs of their rights to equal protection of the law because of their race, ethnicity and/or national origin, in violation of Article I, Paragraph 1 of New Jersey Constitution.

**SIXTH COUNT**

**VIOLATION OF LOCAL REDEVELOPMENT AND HOUSING LAW, N.J.S.A. 40A:12A-1 *ET SEQ*., BY SUBSTANTIAL AND MATERIAL CHANGES TO THE WR REDEVELOPMENT PLAN WITHOUT FORMAL REVISION OR AMENDMENT**

224. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

225. The LRHL, N.J.S.A. 40A:12A-7, provides that no redevelopment project shall be undertaken or carried out except in accordance with a redevelopment plan adopted by ordinance of the municipal governing body.

226. The LRHL, N.J.S.A. 40A:12A-8, further provides that a municipality may proceed with a redevelopment project upon the adoption of a redevelopment plan pursuant to N.J.S.A. 40A:12A-7.

227. The LRHL, N.J.S.A. 40A:12A-7(e), further requires that "Prior to the adoption of a redevelopment plan, or revision or amendment thereto, the planning board shall transmit to the governing body, within 45 days after referral, a report containing its recommendation concerning

the redevelopment plan;" and it further requires that "[T]he governing body, when considering the adoption of a redevelopment plan or revision or amendment thereof, shall review the report of the planning board".

228. The Council failed to refer to the Planning Board proposed amendments or revisions to the WR Redevelopment Plan and the Township Planning Board did not conduct a review of such proposed amendments or revisions.

229. The Council therefore did not review a report of the Planning Board concerning such revisions or amendments.

230. The Council further failed to hold a public hearing and to adopt by ordinance amendments to the WR Redevelopment Plan.

231. The Council violated the LRHL, N.J.S.A. 40A:12A-7, by approving significant and material changes to the WR Redevelopment Plan in closed session without enactment of an ordinance.

232. The Township and Redevelopers are proceeding to implement the new version of the redevelopment plan despite the Township's failure to amend the redevelopment plan pursuant to the LRHL.

233. The actions of the Township in making revisions to and proceeding to effectuate the Redevelopment Plan are arbitrary and capricious, unreasonable and *ultra vires*.

**SEVENTH COUNT**

**VIOLATION OF LRHL, N.J.S.A. 40A:12A-7, BY MAKING *DE FACTO* REVISIONS TO REDEVELOPMENT PLAN RENDERING IT INCONSISTENT WITH TOWNSHIP MASTER PLAN**

234. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

235.  The LRHL, N.J.S.A. 40A:12A-7, states: "All provisions of the redevelopment plan shall be either substantially consistent with the municipal master plan or designed to effectuate the master plan; but the municipal governing body may adopt a redevelopment plan which is inconsistent with or not designed to effectuate the master plan by affirmative vote of a majority of its full authorized membership with the reasons for so acting set forth in the redevelopment plan."

236.  The LRHL, N.J.S.A. 40A:12A-7, also provides for a review by the planning board of consistency of a proposed redevelopment plan with the municipality's master plan.

237.  Upon information and belief, neither the Township Planning Board nor Township Council evaluated the consistency of the de facto revisions to the WR Redevelopment Plan, as set forth in the Developer's concept plan, for consistency with the master plan.

238.  The de facto revisions that the Council informally endorsed on or about September 24, 2007, and has acted to implement rendered the WR  Redevelopment Plan to be substantially inconsistent with the Township master plan and fails to effectuate the master plan.

239.  The Council violated the LRHL by failing to comply with the procedures mandated by  N.J.S.A. 40A:12A-7(d) for adopting a redevelopment plan that is inconsistent with or not designed to effectuate a master plan.

**EIGHTH COUNT**

**VIOLATION OF THE OPEN PUBLIC MEETINGS ACT, N.J.S.A. 10:40-6 *ET SEQ*.,BY DE FACTO REVISION OF WR REDEVELOPMENT PLAN IN CLOSED SESSION**

240.  Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

241.  The Open Public Meetings Act ("OPMA"), N.J.S.A. 10:4-12, requires that "all meetings of public bodies shall be open to the public at all times," with the exception that the

public body may exclude the public only from that portion of a meeting at which the public body discusses certain topics specifically enumerated in subsection b. of that section of the statute.

242. OPMA, N.J.S.A. 10:4-13, further provides that "[N]o public body shall exclude the public from any meeting to discuss any matter described in subsection 7. b. until the public body shall first adopt a resolution, at a meeting to which the public shall be admitted: a. Stating the general nature of the subject to be discussed; and b. Stating as precisely as possible, the time when and the circumstances under which the discussion conducted in closed session of the public body can be disclosed to the public."

243. The Council violated the OPMA, N.J.S.A. 10:4-12 and N.J.S.A. 10:4-13, when it failed to adopt a proper resolution authorizing a closed session, engaged in discussions with Redevelopers and approved a concept plan prepared by the Redevelopers in a closed session, and failed to formalize such action in open session and to give public notification of its actions.

## NINTH COUNT

### VIOLATION OF THE RIGHT TO DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS AS GUARANTEED BY ARTICLE I, PARAGRAPH 1 OF THE NEW JERSEY CONSTITUTION

244. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

245. The Township failed to provide individualized notice to all owners of properties to be acquired under the WR Redevelopment Plan and to otherwise meaningfully inform and give notice to residents of the effects of redevelopment activities upon their constitutionally protected property rights.

246. The Township conducted private meetings with Redevelopers and other entities regarding the redevelopment initiative without giving notice to residents or an opportunity to be heard.

247. The Township made revisions to the WR Redevelopment Plan without holding a public meeting as required by OPMA, N.J.S.A. 10:4-13, conducting a formal process for amending a redevelopment plan as required by the LRHL, N.J.S.A. 40A:12A-7, and providing notice to the public and an opportunity for residents to he heard with regard to the amendments.

248. The Township has taken improper actions to amend and implement the redevelopment plan without adequate notice and an opportunity to be heard, significantly and substantially interfering with and infringing upon the property rights of Residents.

249. The Township's failure to follow the LRHL's formal plan amendment procedures, before taking drastic implementation actions destroying and dismantling the Gardens neighborhood, is unjust and arbitrary governmental action, resulting in the unfair treatment of Gardens residents, and inflicting upon them oppression, harassment, and egregious deprivation causing unjustified harassment, anxiety, and expense.

250. The Township's actions violate due process and fundamental fairness under the Article 1, Paragraph 1, of the New Jersey Constitution.

## TENTH COUNT

**VIOLATION OF THE RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. §1983**

251. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

252. As set forth above in the Ninth Count of this Complaint, the Township has taken actions that infringe upon and deprive Residents of their property rights without meaningful and adequate notice and opportunity to be heard.

253. The Township, acting under color of state law, has deprived Residents of their rights secured by the Due Process Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

## ELEVENTH COUNT

## ADOPTION, REVISION, AND IMPLEMENTATION OF THE REDEVELOPMENT PLAN IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE

254. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

255. The actions of the Township in 1) adopting a redevelopment plan that fails to provide for the housing needs of its residents, reduces the supply of affordable housing, forcibly displaces low and moderate income families; 2) revising the plan without following statutorily mandated procedures that provide for public notice and input; and 3) acting in an *ultra vires* manner to effectuate this redevelopment plan as revised, while causing severe harm to the residents of the Gardens, are in contravention to the plan's own stated goals, inconsistent with the purposes of LRHL, N.J.S.A. 40A:12A-2, and arbitrary, capricious, and unreasonable.

## TWELTH COUNT

## VIOLATION OF THE GENERAL WELFARE UNDER ARTICLE I, PARAGRAPH 1 OF THE NEW JERSEY CONSTITUTION

256. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

257.     The general welfare under Article I, Paragraph 1 of the New Jersey Constitution requires municipalities to regulate and use land to promote the public health, safety, and general welfare of people of all incomes and economic status within the municipality, and therefore prohibits municipalities from using their redevelopment police powers in a manner that displaces and excludes existing lower-income residents from their community.

258.     The WR Redevelopment Plan calls for replacing the 329 residential units in the Gardens with 228 residential units, of which only 10%—a total of 23—would be affordable housing units, with the remaining 205 units to be market rate units.

259.     The Township is in the process of acquiring and demolishing all of the existing homes in the Gardens, although the houses were structurally sound and the Township had not demonstrated that they constituted a substantial threat to health and safety and could not be restored to standard condition within a reasonable time and at a reasonable expense.

260.     Most of the households in the Gardens are lower and moderate income and will not be able to afford the market rate units called for in the WR Plan

261.     The Township has violated the general welfare under Article I, Paragraph of the New Jersey Constitution by adopting and implementing the WR Redevelopment Plan and failing to ensure that the regulation and use of land be made in such manner as to promote the public health, safety, and general welfare of people of all incomes and economic status within Mt. Holly Township; by destroying existing affordable housing and forcibly displacing low and moderate income residents; by failing to replace lost affordable housing; and by failing to act and legislate for the general welfare of people throughout the State of New Jersey, including the region wherein Mt. Holly Township lies.

262. The Township has further violated the general welfare by implementing the WR Redevelopment Plan in a manner that has created unsafe and increasingly blighted conditions, greatly decreased quality of life, interfered with the residents' use and enjoyment of their property, forced residents to move out of their community, and provided them with inadequate compensation and relocation assistance to enable them to secure comparable decent safe replacement housing in the Township.

263. The Township's proposed *de facto* changes to the WR Redevelopment Plan, increasing the total number of residential units to be built in the redevelopment area to 520, and proposing construction of only 56 COAH units, also violate the general welfare by proposing to destroy existing housing affordable to low and moderate income Gardens residents and to forcibly displace most low and moderate income Gardens families; and by failing to replace lost affordable housing and guarantee that any of the new units would be realistically affordable or available to Gardens residents .

## THIRTEENTH COUNT

## DENIAL OF JUST COMPENSATION UNDER 5TH AMENDMENT TO THE UNITED STATES CONSTITUTION ACTIONABLE PURSUANT TO 42 U.S.C. § 1983

264. Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

265. The Fifth Amendment to the United States Constitution prohibits the taking of private property without provision of just compensation.

266. The prices that the Township has paid and is continuing to offer for purchases of property do not constitute just compensation.

267. In addition, within the context of redevelopment of lower income communities resulting in low and moderate income homeowners being displaced, payment of fair market

value does not constitute just compensation where fair market value is less than the replacement value of housing within the local housing market.

268.  As a result, the Township, acting under color of state law, is depriving homeowner Residents of just compensation in violation of the Fifth Amendment.

## FOURTEENTH COUNT

## DENIAL OF JUST COMPENSATION UNDER ARTICLE 1, PARAGRAPH 20 OF THE NEW JERSEY CONSTITUTION

269.  Residents and CIA reallege and incorporate by reference the allegations in all previous Paragraphs of this Complaint as if fully pleaded herein.

270.  Article I, Paragraph 20 of the New Jersey Constitution provides that private property may not be taken without just compensation.

271.  Within the context of redevelopment of lower income communities resulting in low and moderate income homeowners being displaced, payment of fair market value does not constitute just compensation where fair market value is less than the replacement value of housing within the local housing market.

272.  As set forth in the Thirteenth Count of this Complaint, the Township is seeking to acquire property under threat of eminent domain without payment of just compensation, in violation of Article I, Paragraph 20 of the New Jersey Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Residents respectfully request that the Court enter judgment against the Township and Redevelopers:

A.       Declaring that the Township and Redevelopers have violated Residents' rights under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §3601 *et seq*.;

B.   Declaring that the Township has violated Residents' rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*.;

C.   Declaring that the Township has violated Residents' rights under 42 U.S.C. §1982;

D.   Declaring that the Township has violated plaintiffs' rights to equal protection of the   law guaranteed by the Fourteenth Amendment to the United States Constitution;

E.   Declaring that the Township has violated plaintiffs' rights to equal protection of the  law as guaranteed by Article I, Paragraph 1 of New Jersey Constitution;

F.   Declaring that the Township has violated the LRHL;

G.   Declaring that the Township has violated the OPMA;

H.   Declaring the Township has deprived Residents of due process rights guaranteed under the United States Constitution;

I.   Declaring the Township has violated due process and fundamental fairness guaranteed under the New Jersey Constitution;

J.   Declaring that the that the undervalued prices being offered and paid by the Township to purchase homes under threat of eminent domain violate the requirement of just compensation mandated under Article I, Paragraph 20 of the New Jersey Constitution and   the Fifth Amendment of the United States Constitution;

K.   Declaring that within the context of redevelopment of lower income communities resulting in low and moderate income homeowners being displaced, payment of fair market value violates the requirement of just compensation where fair market

value is less than the replacement value of housing within the local housing market mandated under Article I, Paragraph 20 of the New Jersey Constitution and the Fifth Amendment of the United States Constitution;

L.      Declaring the Township's actions in adopting, revising, and implementing the Redevelopment Plan are arbitrary, capricious, unreasonable, and *ultra vires.*

M.      Declaring that the Township has violated the general welfare in Article I, Paragraph 1 of the New Jersey Constitution;

N.      Preliminarily and permanently enjoining the Township and Redevelopers from further implementing their current Redevelopment Plan;

O.      Preliminarily and permanently requiring the Township and Redevelopers to carry out any further redevelopment in the Gardens in a manner having the least discriminatory adverse impact upon African-American and Hispanic households;

P.      Preliminarily and permanently prohibiting the Township and Redevelopers from demolishing, removing, purchasing or obtaining through eminent domain residential dwellings within the Gardens, or otherwise implementing redevelopment, without providing for rehabilitation of housing and/or adequate affordable replacement housing for all current and displaced Gardens residents.

Q.      Damages and/or just compensation sufficient for Residents to secure permanent replacement housing in the local housing market;

R.      Preliminarily and permanently compelling the Township to provide the Gardens residents with adequate municipal services, including but not limited to police, fire protection, code enforcement, trash collection and community services;

S.      Awarding compensatory damages;

T.    Awarding punitive damages;

U.    Awarding plaintiffs costs of suit;

V.    Ordering the Township and Redevelopers to pay plaintiffs' reasonable expert and attorney's fees, except that no attorney's fees are requested by South Jersey Legal Services, Inc; and

W.    Granting such other relief and the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P 38(b), the plaintiffs demand a trial by jury of all issues so triable as of right.

Dated:  May 27, 2008

**SOUTH JERSEY LEGAL SERVICES, INC.**
*Attorneys for Plaintiffs*: Mt. Holly Gardens Citizens In Action, Inc., Pedro Arocho, Christine Barnes, Bernice Cagle, George Chambers, Dorothy Chambers, Elida Echevaria, Norman Harris,  Elmira Nixon, Leonardo Pagan, Joyce Starling, Taisha Tirado, Dagmar Vicente, Charlie Mae Wilson, Reynaldo Arocho, Ana Arocho, Mattie Howell, Nancy Lopez, Vincent Munoz, Henry Simons, Alandria Warthen and Leona Wright

By:   /s/ Olga D. Pomar
     OLGA D. POMAR, ESQUIRE

By:  /s/ Kenneth M. Goldman
     KENNETH M. GOLDMAN, ESQUIRE
     (KG 8040)

By:  /s/ David M. Podell
     DAVID M. PODELL, ESQUIRE (DP 1975)

**AARP FOUNDATION LITIGATION**
*Attorneys for Plaintiffs:* Reynaldo Arocho, Ana Arocho, Mattie Howell, Nancy Lopez, Vincent Munoz, Henry Simons, Leona Wright, Lyra Baedresingh, Leon Calhoun, Santos Cruz, Rosemary Roberts, William Roberts, Lissette

Rodriguez, Efraim Romero, Radames Torres-Moreno and Lillian Torres-Moreno

By: /s/Susan Ann Silverstein
    SUSAN ANN SILVERSTEIN, ESQUIRE
    (pending admission *pro hac vice*)

**POTTER AND DICKSON**
*Attorneys for Plaintiffs:* Lyra Baedresingh, Leon Calhoun, Santos Cruz, Rosemary Roberts, William Roberts, Lissette Rodriguez, Efraim Romero, Radames Torres-Moreno and Lillian Torres-Moreno

By: /s/ R. William Potter
    R. WILLIAM POTTER, ESQUIRE

## L.Civ.R. 11.2 CERTIFICATION

Pursuant to L.Civ.R. 11.2, the undersigned attorneys hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. The undersigned attorneys certify that the foregoing statements are true. The undersigned attorneys understand that if any of the above statements made by me are willfully false, the undersigned attorneys are subject to punishment.

Dated: May 27, 2008

**SOUTH JERSEY LEGAL SERVICES, INC.**
*Attorneys for Plaintiffs*: Mt. Holly Gardens Citizens In Action, Inc., Pedro Arocho, Christine Barnes, Bernice Cagle, George Chambers, Dorothy Chambers, Elida Echevaria, Norman Harris, Elmira Nixon, Leonardo Pagan, Joyce Starling, Taisha Tirado, Dagmar Vicente, Charlie Mae Wilson, Reynaldo Arocho, Ana Arocho, Mattie Howell, Nancy Lopez, Vincent Munoz, Henry Simons, and Leona Wright

By: /s/ Olga D. Pomar
    OLGA D. POMAR, ESQUIRE

By: /s/ Kenneth M. Goldman
    KENNETH M. GOLDMAN, ESQUIRE
    (KG 8040)

By: /s/ David M. Podell
    DAVID M. PODELL, ESQUIRE (DP 1975)

**AARP FOUNDATION LITIGATION**
*Attorneys for Plaintiffs:* Reynaldo Arocho, Ana Arocho, Mattie Howell, Nancy Lopez, Vincent Munoz, Henry Simons, Leona Wright, Lyra Baedresingh, Leon Calhoun, Santos Cruz, Rosemary Roberts, William Roberts, Lissette Rodriguez, Efraim Romero, Radames Torres-Moreno and Lillian Torres-Moreno

By: /s/Susan Ann Silverstein
    SUSAN ANN SILVERSTEIN, ESQUIRE
    (pending admission *pro hac vice*)

**POTTER AND DICKSON**
*Attorneys for Plaintiffs:* Lyra Baedresingh, Leon Calhoun, Santos Cruz, Rosemary Roberts, William Roberts, Lissette Rodriguez, Efraim Romero, Radames Torres-Moreno and Lillian Torres-Moreno

By: /s/ R. William Potter
    R. WILLIAM POTTER, ESQUIRE