## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MT HOLLY CITIZENS IN ACTION, INC., et al., | : | |
| | : | |
| | : | Civil Action No. |
| Plaintiffs, | : | **08-2584 (NLH)** |
| | : | |
| v. | : | |
| | : | |
| TOWNSHIP OF MOUNT HOLLY, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**Appearances:**

DOUGLAS E. GERSHUNY, EXEC. DIR.
OLGA D. POMAR
DAVID M. PODELL
SOUTH JERSEY LEGAL SERVICES, INC.
745 MARKET STREET
CAMDEN, NJ 08102
*Attorneys for Plaintiffs*

R. WILLIAM POTTER
POTTER & DICKSON
194 NASSAU STREET
PRINCETON, NJ 08542
*Attorney for Plaintiffs*

SUSAN ANN SILVERSTEIN
AARP FOUNDATION LITIGATION
601 E STREET, NW
WASHINGTON, DC 20049
*Attorney for Plaintiffs*

GAETANO MERCOGLIANO
SWEENEY & SHEEHAN
216 HADDON AVENUE, SUITE 500
WESTMONT, NJ 08108
*Attorney for Defendant Triad Associates, Inc.*

Page 1

M. JAMES MALEY
MALEY & ASSOCIATES
931 HADDON AVENUE
COLLINGSWOOD, NJ 08108
*Attorney for Defendant Mount Holly Township, et al.*

WILLIAM J. DESANTIS
BALLARD SPAHR ANDREWS & INGERSOLL LLP
PLAZA 1000 - SUITE 500
MAIN STREET
VOORHEES, NJ 08043
*Attorney for Defendant Keating Urban Partners, L.L.C.*

**HILLMAN, District Judge**

This matter has come before this Court upon Defendants Township of Mount Holly's[1], Keating Urban Partners, L.L.C.'s[2], and Triad Associates, Inc.'s motions to dismiss Plaintiffs' Amended Complaint.  This opinion addresses only the jurisdictional issues raised in the motions to dismiss.[3]

---

[1] Joining in the brief submitted on behalf of Township of Mount Holly are defendants Kathleen Hoffman and Brooke Tidswell, III, collectively "Township Defendants."

[2] Defendant Keating Urban Partners, L.L.C. relied upon the brief submitted by the Township of Mount Holly.

[3] On September 22, 2008, the Township Council invalidated the redevelopment plan challenged in the Amended Complaint with the adoption of the Revised West Rancocas Redevelopment Plan ("Revised WRRP").  Counsel for Plaintiffs have moved for leave to file a second amended complaint in light of the revised redevelopment plan.  Because Plaintiffs have moved to file a second amended complaint, this Court will address the objections to the merits of the claims in conjunction with Plaintiffs' motion for leave to amend.  Of course, we express no opinion regarding our subject matter jurisdiction over claims not yet filed.

This Court holds that it has subject matter jurisdiction over the claims in Counts 1 through 5 and 9 through 12 of the Amended Complaint.  It does not, however, have subject matter jurisdiction over the claims in Counts 6 through 8 because these claims are now moot.  Likewise, this Court does not have subject matter jurisdiction over Counts 13 and 14 because these claims are unripe for adjudication.  This Court will not abstain from exercising its jurisdiction over the remaining claims, and in the interests of judicial economy, will exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any state law claims found in Counts 1 through 5 and 9 through 12.

## JURISDICTION

As Plaintiffs have alleged violations of the United States Constitution, the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1982, this Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## BACKGROUND

Mount Holly Gardens ("Gardens") is a neighborhood in Mount Holly, New Jersey.  Its residents are primarily low-income African-Americans and Hispanics.  This demographic contrasts with

that of the rest of Mount Holly, whose residents are primarily white and have a higher median income.

In 2002, the Mount Holly Township Council ("Township Council") determined that the Gardens was an "area in need of redevelopment" under New Jersey law.  See N.J.S.A. 40A:12A-1 et seq.  Pursuant to this determination, the Township Council passed the Gardens Area Redevelopment Plan ("GARP") in 2003.  In 2005, this redevelopment plan was superseded by the passage of the West Rancocas Redevelopment Plan ("WRRP").  The redevelopment plans called for the acquisition and demolition of the 329 homes in the Gardens redevelopment area.[4]

Fearing displacement, Plaintiff Mount Holly Gardens Citizens in Action ("CIA"), an advocacy group for Gardens residents, and multiple Gardens residents filed suit in New Jersey state court in 2005.  In May 2005, Judge Sweeney of the New Jersey Superior Court found: (1) that the Gardens was an area in need of redevelopment under New Jersey law; (2) that the Township Council had followed proper procedures with respect to the redevelopment from 2002 through 2005; and (3) that the WRRP complied with New Jersey's Local Redevelopment and Housing Law ("LRHL").  In August 2005, Judge Sweeney dismissed Plaintiffs' civil rights claims without prejudice as unripe.  All of Judge Sweeney's rulings were

---

[4] The WRRP left open the possibility that some homes might be rehabilitated rather than demolished.  However, it did not indicate how many homes, if any, might be salvaged.

upheld by the New Jersey Superior Court, Appellate Division, and the New Jersey Supreme Court denied certification.

Since Judge Sweeney's rulings in 2005, the Township has taken substantial steps towards redeveloping the Gardens.  In 2006, the Township selected defendant Keating Urban Partners, L.L.C. as its redeveloper.  Keating, in turn, hired defendant Triad Associates, Inc. to conduct relocation activities. Plaintiffs allege that the Township has acquired at least 219 of the 329 residential units in the Gardens redevelopment area and has demolished at least 73 units.  In April of 2008, the Township Council passed an ordinance stating that the Township is or will be the owner of all homes in the Gardens redevelopment area. This ordinance also authorized the use of eminent domain proceedings in furtherance of this goal.

On May 27, 2008, Plaintiffs CIA and numerous current and former Gardens residents ("Residents") filed suit in this Court. Their Amended Complaint, comprising five (5) federal and nine (9) state law counts, challenged the implementation of the WRRP as discriminatory both in intent and effect.  The Amended Complaint also alleged that the Township Council had failed to follow required procedures with respect to the modification of the WRRP, and that the redevelopment activities constituted a governmental taking without just compensation.

Page 5

**<u>DISCUSSION</u>**

I.   <u>Subject Matter Jurisdiction</u>

This Court must first determine whether it has subject matter jurisdiction over this action.  Defendants argue that Counts 1, 2, 3, 4, 5, 13, and 14 of the Amended Complaint are unripe for adjudication; that Counts 6 through 9 are now moot; and that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine.  These issues are addressed in turn below.

A.   <u>Ripeness</u>

An Article III court lacks subject matter jurisdiction over claims that are unripe.  The Supreme Court has explained that claims relying upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" are unripe for adjudication and must be dismissed.  <u>Thomas v. Union Carbide Agricultural Products Co.</u>, 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)).  In determining the ripeness of a claim, the court must "evaluate both the fitness of the issues for judicial consideration and the hardship to the parties of withholding court consideration." <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

With these rulings in mind, we shall now analyze the ripeness of Plaintiffs' civil rights claims (Counts 1 through 5) and Plaintiffs' taking claims (Counts 13 and 14).

(a)  <u>Civil Rights Claims - Counts 1 through 5</u>

Counts 1 through 5 of the Amended Complaint allege violations of Plaintiffs' civil rights.  Plaintiffs argue, in essence, that the Township's planned demolition of minority-occupied housing is discriminatory both in intent and effect. Plaintiffs allege violations of the Fair Housing Act, the Civil Rights Act of 1866, the Equal Protection Clause of the Fourteenth Amendment, the New Jersey Law Against Discrimination, and the Equal Protection Clause of the New Jersey Constitution.

Defendants contend that these claims are not ripe and must therefore be dismissed.  The Township states that "Plaintiffs fail to articulate any harm other than that recited before the State courts during the prior litigation, rendering their claims speculative and un-ripe." (Township's Brief in Support of Motion to Dismiss, p. 17.)  Furthermore, the Township states that "[n]o Plaintiff is alleged to have been unable to find safe, decent, affordable housing or been forcibly removed from their home. Plaintiffs allege that they may be unable to find affordable housing if they are forced to relocate.  Such allegations rest on

Page 7

contingent future events that may never occur." (Township's Brief, p. 18.)

However, the complaint alleges that at this point, the Township has acquired 219 residential units out of the 329 homes in the Gardens redevelopment area. At least 73 of these units have been demolished. In April of 2008, the Township Council passed an ordinance stating that the Township is or will be the owner of all homes in the redevelopment area. The ordinance authorizes the use of eminent domain proceedings in conjunction with the acquisition of these homes, and the Township has commenced eminent domain proceedings against at least one property owner. In light of these developments, the majority of Plaintiffs' claims are no longer speculative. The ripeness of each challenged count will be analyzed below.

(1) Fair Housing Act, 42 U.S.C. § 3601 et seq.

Plaintiffs have alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. The FHA defines an "aggrieved person" as any person who "claims to have been injured by a discriminatory housing practice," or who "believes that such person will be injured by a discriminatory housing practice that is about to occur." § 3602(i). Plaintiffs' claims may therefore be ripe under the statute even if Plaintiffs have not yet been injured by a discriminatory housing practice.

The first claim Plaintiffs bring under the FHA is a violation of 42 U.S.C. § 3604(a).  This section makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, <u>or otherwise make unavailable or deny</u>, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  § 3604(a) (emphasis added).  Plaintiffs contend that by acquiring and demolishing their homes, Defendants will "make unavailable or deny" their dwellings within the meaning of § 3604(a).

Plaintiffs' claim under § 3604(a) is ripe for adjudication.  Plaintiffs are "aggrieved persons" for purposes of this section because they believe that Defendants are about to make their homes unavailable to them in violation of § 3604(a).  This belief is well-founded in light of recent events.  Indeed, the Township Council passed an ordinance in April of 2008 declaring that the Township would be the owner of Plaintiffs' homes.

Thus, Plaintiffs' claims under § 3604(a) are no longer speculative.  It is clear that the Township intends to take their homes.  This issue is fit for judicial consideration, as it is clear that, if Plaintiffs' claims are valid, injury will occur in the absence of judicial intervention.  Additionally, there would be considerable hardship to the Plaintiffs in withholding court consideration until their homes have actually been taken, as they

Page 9

have alleged that they wish to remain in their homes.  Thus, Plaintiffs' claim under § 3604(a) is ripe.

Having determined that Plaintiffs' claim under § 3604(a) is ripe, we now turn to their claim under § 3604(b).  Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  § 3604(b).  Plaintiffs allege that "by failing to provide adequate essential services," Am. Compl. p. 38, the Township has discriminated against them in violation of § 3604(b).

This claim is also ripe for adjudication.  The actions challenged pursuant to § 3604(b) are not speculative; rather, Plaintiffs challenge actions that the Township has already taken.  Because this claim rests on events that have already occurred, it is ripe for adjudication.

Having found that Plaintiffs' claim under § 3604(b) is ripe, we now turn to Plaintiffs' claim under § 3617.  Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Plaintiffs allege that they have been harassed as a result of remaining in their dwellings and that this harassment

is discriminatory.  Because Plaintiffs allege a harm that has already occurred, this claim is ripe for adjudication.

           (2) <u>Civil Rights Act of 1866, 42 U.S.C. § 1982</u>

The Civil Rights Act of 1866, as amended, guarantees that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  Plaintiffs allege that the Township's plan to acquire and demolish their homes is based in part on racial animus and thus violates their rights under § 1982.

Defendants allege that this claim is not ripe for adjudication.  However, as discussed above, it is now clear that the Township will acquire Plaintiffs' homes.  The claim is thus fit for judicial consideration, as Plaintiffs' claims that they will lose their homes are no longer speculative.  Withholding court consideration would result in a hardship to Plaintiffs because forcing them to wait until they are actually displaced would eclipse any chance they have of obtaining the equitable relief they desire.

           (3) <u>Equal Protection under the Fourteenth Amendment and of Art. I, Para. 1 of the New Jersey Constitution</u>

Plaintiffs allege that the Township has intentionally discriminated against them on the basis of race in violation of

the Equal Protection Clause of the Fourteenth Amendment and the Equal Protection under Art. I, para. 1 of the New Jersey Constitution.  The discriminatory acts that Plaintiffs allege include planning to demolish their housing, harassment in an effort to force Plaintiffs to leave the Gardens, and the reduction of municipal services in the Gardens.

Defendants contend that these claims are not ripe for adjudication.  However, some of the harms alleged have already occurred, and the demolition of Plaintiffs' housing, as noted above, is no longer speculative.  Because the harms Plaintiffs allege under these counts are not speculative, and because withholding court consideration would create a hardship for the plaintiffs, these counts are ripe for adjudication.

(4) New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq.

Plaintiffs allege violations of sections 10:5-12.5 and 10:5-4 of the New Jersey Law Against Discrimination ("LAD").  Section 10:5-12.5 of the LAD states that

it shall be unlawful discrimination for a municipality, county or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof, to exercise the power to regulate land use or housing in a manner that discriminates on the basis of race, creed, color, national origin, ancestry, marital status, familial status, sex, gender identity or expression, nationality or disability. (emphasis added)

N.J.S.A. 10:5-12.5.  Plaintiffs allege that the Township's redevelopment of the Gardens is racially discriminatory and thus violates section 10:5-12.5 of the LAD.

The Township contends that this claim is not ripe for adjudication.  However, Plaintiffs allege in this claim certain harms that have already occurred, including the reduction of services provided by the Township and the demolition of housing. Because these harms are not speculative, but have already occurred, this claim is ripe for adjudication.  Having addressed the ripeness of Plaintiffs' claim under section 10:5-12.5 of the LAD, we now turn to Plaintiffs' claim under section 10:5-4.

Section 10:5-4 of the LAD states that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination" on the basis of race, color, or national origin.  N.J.S.A. 10:5-4.  Plaintiffs allege that the Defendants (including the Redevelopers) have violated this section of the LAD by acquiring, vacating, and demolishing previously-occupied housing in the Gardens.

Defendants contend that this claim is not ripe for adjudication.  However, at this point, the harms Plaintiffs allege are not speculative.  Defendants have demolished many units in the Gardens and have evidenced their intent to acquire

Page 13

and demolish the remaining units.  Therefore, Plaintiffs' claim
is not speculative, and it is ripe for adjudication.

    <u>(b) Counts 13 and 14 - Denial of Just Compensation under the
Fifth Amendment and Art. I, para. 20 of the New Jersey
Constitution</u>

This Court holds that Counts 13 and 14 are not ripe for
adjudication, and will be dismissed without prejudice.[5]

A taking claim is not ripe until state procedures for
seeking just compensation have been exhausted.  As the Third
Circuit recently explained, "Because the Fifth Amendment bars not
just the 'taking' of property, but the taking of property

---

[5] Plaintiffs, concerned that they might run afoul of New
Jersey's entire controversy doctrine, have asked this Court to
expressly reserve their right to bring their taking claims in a
separate state court litigation.  This request is denied because
Plaintiffs have cited no authority for the proposition that a
federal court has the power to prejudge an issue of state
procedural law.  Nor have Plaintiffs cited cases standing for the
proposition that their unripe claims will be barred unless this
Court expressly reserves their right to bring them in a later
litigation.  We believe that it will be for the state courts to
determine whether Plaintiffs have complied with state procedural
rules, if and when such proceedings are brought.

It is noted, however, that this Court foresees no harm to
Plaintiffs as a result of this denial.  New Jersey's entire
controversy doctrine requires litigants to bring all claims
arising out of the same facts in the same litigation.  <u>See</u>
N.J.S.A. Rule 4:30A.  However, "[t]he entire controversy doctrine
does not require that all claims be adjudicated in one
proceeding, it merely requires that a party assert those claims
at the outset.... Thus, it is the party's original compliance
with the doctrine ... that ensures preservation of that claim."
<u>Mystic Isle Development Corp. v. Perskie & Nehmad</u>, 142 N.J. 310,
332, 662 A.2d 523, 534 (N.J. 1995), <u>overruled on other grounds by
Olds v. Donnelly</u>, 150 N.J. 454, 696 A.2d 633 (N.J. 1997).

'without just compensation,' a plaintiff 'cannot claim a violation of the Just Compensation Clause until' he or she has exhausted a state's 'procedure for seeking just compensation.'" County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 168 (3d Cir. 2006) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 & 194 n. 13, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).  Although County Concrete Corp. addressed only takings under the Fifth Amendment, the rule applies equally to a taking "without just compensation" prohibited by the New Jersey Constitution.

In this case, Plaintiffs have not exhausted New Jersey's procedures for seeking just compensation.  Therefore, Plaintiffs' taking claims are unripe and must be dismissed without prejudice.

Having addressed Defendants' arguments that Plaintiffs' claims are unripe, we now turn to Defendants' arguments that Counts 6 through 9 are rendered moot by the passage of the Revised WRRP.

B.  Mootness

The parties agree that Counts 6 through 8 of the Amended Complaint are now moot.  These counts are therefore dismissed. However, Plaintiffs contest Defendants' assertion that the passage of the Revised WRRP moots Count 9 of the Amended Complaint.  The issue before the Court is whether the passage of

Page 15

the Revised WRRP, which is not alleged to have violated
statutorily-required procedures, moots Plaintiffs' due process
and fundamental fairness claims under Art. I, para. 1 of the New
Jersey Constitution.

A defendant may not "moot a case by repealing the challenged
statute and replacing it with one that differs only in some
insignificant respect." Northeastern Florida Chapter of the
Associated General Contractors of America v. City of
Jacksonville, Florida, 508 U.S. 656, 662, 113 S.Ct. 2297, 124
L.Ed.2d 586 (1993).  Likewise, "[a] claim is not mooted by the
amendment [of a challenged statute] if the 'gravamen of
petitioner's complaint' remains because, although the new
ordinance 'may disadvantage [plaintiffs] to a lesser degree than
the old one,' still 'it disadvantages them in the same
fundamental way.'" Nextel West Corp. v. Unity Township, 282 F.3d
257, 262 (3d Cir. 2002) (quoting Northeastern Florida Chapter of
the Associated General Contractors of America, 508 U.S. at 662).

In this case, Plaintiffs allege that the substance of the
Revised WRRP is essentially the same as the "concept plans"
challenged in Count 9 of the Amended Complaint.  They claim that
the Township's compliance with proper procedures in the passage
of the Revised WRRP was "little more than a sham, depriving
Residents of due process." (Plaintiffs' Opposition to Townships'
Letter Brief, pp. 6-7.)  In sum, they appear to argue that

Page 16

Defendants violated due process and fundamental fairness in adopting the WRRP and in subsequently formulating "concept plans"; that the Revised WRRP is, in substance, equivalent to the offending "concept plans"; that in enacting the "concept plan" as the Revised WRRP, the Township merely made a show of complying with the Open Public Meetings Act and the Local Housing and Redevelopment Law; and that therefore, the passage of the Revised WRRP did not afford Plaintiffs due process and fundamental fairness, as guaranteed by the New Jersey Constitution.

Taking the facts in the light most favorable to the Plaintiffs, Count 9 is not moot.  Accepting Plaintiffs' allegations and inferences as true, there is a live controversy as to whether Plaintiffs have been afforded due process and fundamental fairness in the process of enacting a redevelopment plan.  The New Jersey Supreme Court explained the requirements of due process in Doe v. Poritz, 662 A.2d 367 (N.J. 1995):

> Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner.  Kahn v. U.S., 753 F.2d 1208, 1218 (3d Cir. 1985).  The minimum requirements of due process, therefore, are notice and the opportunity to be heard.  U.S. v. Raffoul, 826 F.2d 218, 222 (3d Cir. 1987) (citing Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

Id. at 420-21.  If the public process utilized in passing the Revised WRRP was, in fact, "little more than a sham," see Plaintiffs' Opposition, p. 7, and if Plaintiffs therefore did not have the "opportunity to be heard at a meaningful time and in a

Page 17

meaningful manner," then the passage of the Revised WRRP cannot
have cured the lack of due process alleged in Count 9.
Therefore, Count 9 is not moot.

Having decided the issue of lack of subject matter
jurisdiction due to mootness, we now turn to Defendants' argument
that this Court lacks subject matter jurisdiction under the
Rooker-Feldman doctrine.

C.   Rooker-Feldman

Defendants argue that this Court lacks subject matter
jurisdiction under the Rooker-Feldman doctrine.  However, Rooker-
Feldman is inapplicable to the case at hand.  Therefore, this
Court has subject matter jurisdiction over all remaining claims
(Counts 1 through 5 and Counts 9 through 12).

The Supreme Court recently clarified the Rooker-Feldman
doctrine in Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  Exxon
Mobil made clear that a district court lacks subject matter
jurisdiction under Rooker-Feldman only in "cases brought by
state-court losers complaining of injuries caused by state-court
judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of
those judgments."  Id. at 283.  Thus, Rooker-Feldman only applies

Page 18

when a litigant is essentially seeking appellate review of a state-court judgment in the district courts.

In this case, Plaintiffs are not asking this court to exercise appellate review over the judgment rendered in the New Jersey state court litigation.  Rather, Plaintiffs are bringing their now-ripe civil rights claims, dismissed three years ago as unripe, as well as claims regarding violations of proper procedures that have occurred since the 2005 state court litigation.  Even if some issues raised in this litigation were already decided in the state court litigation, this does not implicate Rooker-Feldman.  Rather, the handling of matters already litigated would be dictated by preclusion law, which is not a jurisdictional matter.  Id. at 293.  Thus, Rooker-Feldman does not apply to this case, and this Court has subject matter jurisdiction over the claims in Counts 1 through 5 and Counts 9 through 12 of the Amended Complaint.

Having ruled that this Court has subject matter jurisdiction over Counts 1 through 5 and 9 through 12, we shall now address Defendants' arguments that this Court should abstain from exercising its jurisdiction under Burford.


II.  Burford Abstention

Defendants request that this Court abstain from hearing Plaintiffs' claims.  For the reasons explained below, this court will not abstain from exercising its jurisdiction.

"Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue.  The doctrine was born out of a concern for the maintenance of our federal system; seeking to avoid unnecessary conflicts between the federal judiciary and state government."  Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 746 (3d Cir. 1982), citing Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 500-01, 61 S.Ct. 643, 645, 85 L.Ed 971 (1941).

Concededly, eminent domain and land use issues are traditionally local in nature.  As the Third Circuit noted in Izzo v. Borough of River Edge, 843 F.2d 765, 769 (3d Cir. 1988), "[l]and use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong."  Id. at 769.  However, "the mere existence of land use regulation will not automatically mandate federal court abstention."  Id.

This court may abstain only if, after carefully examining the facts of the case, it determines that the case falls into one of the narrow categories of cases from which a district court may

Page 20

properly abstain.  Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-63, 3 L.Ed.2d. 1163 (1959).  Defendants argue that abstention is justified in this case under the Supreme Court decision in Burford v. Sun Oil Co.  However, an analysis under Burford demonstrates that abstention is not warranted in this case.

Burford abstention derives its name from the case of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).  That case dealt with abstention in the context of Texas' highly complex, state-wide regulatory system for gas and oil conservation.  The complexity of the law and the importance of not having conflicting decisions led Texas to centralize adjudication of claims in the Texas Railroad Commission and a single state court.  The Supreme Court held that in this situation, the federal district court should abstain from hearing claims normally adjudicated by the centralized court.  "The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts

.... Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts." Id. at 333-34. In upholding the district court's decision to abstain, the Supreme Court recognized that incorrect decisions of difficult and industry-specific Texas law in individual cases could seriously disrupt state-wide regulation of an industry essential to Texas' economy.

The Supreme Court further explained Burford abstention in the case of New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans ("NOPSI"), 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).  The court described the analysis the district court must undertake thusly:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of a question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Id. at 361 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).  Additionally, the Third Circuit has instructed us that the Burford inquiry must begin with an analysis of whether timely

and adequate state court review is available.  See Riley v.
Simmons, 45 F.3d 764, 771 (3d Cir. 1995).

In the present case, it is clear that timely and adequate
state court review is available.  There is no bar preventing
Plaintiffs from filing suit in the New Jersey state courts.
Indeed, Plaintiffs brought their first suit on related matters in
the New Jersey state court system.  This court has no doubt that
the New Jersey state courts would provide plaintiffs with
adequate and timely review.  Having made the threshold
determination that adequate and timely state court review is
available, this Court must determine whether abstention is
warranted under either prong of the NOPSI analysis.

A district court must abstain under the first prong of NOPSI
only if there are "difficult questions of state law bearing on
policy problems of substantial public import whose importance
transcends the result in the case at bar."  In this case, the
state law in question is not "difficult" in the sense that the
law in Burford was difficult.  The regulations at issue in
Burford required expertise in the complex area of gas and
drilling, and there was a significant probability that courts
unfamiliar with the industry would err in rendering decisions.
That is one of the reasons why Texas elected to have a single
state court hear all such claims - so that the adjudicating court

would have the expertise necessary to come to the correct conclusion.

In contrast, the state law at issue here is not so difficult as to require expertise to properly apply the law.  Plaintiffs' state law claims require interpretation of the New Jersey Constitution, New Jersey's Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq., and New Jersey's Open Public Meetings Act, N.J.S.A. 10:40-6 et seq.  While New Jersey courts will of course have more experience applying these laws, such is always the case when a federal court hears state law claims.  Interpretation of these laws is not so difficult to warrant abstention under Burford.  Having concluded that Burford abstention is not warranted under the first prong of NOPSI, we now turn to the second prong.

The second prong of NOPSI requires a district court to abstain where the "exercise of federal review of a question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Defendants contend that this Court's review would disrupt New Jersey's policies with respect to eminent domain and land use.  Although there is some support for their contention that this Court may abstain under NOPSI's second prong, see, e.g., Rucci v. Cranberry Township, 130 Fed. Appx. 572 (3d Cir. 2005), those cases are distinguishable and in

Page 24

any event, do not mandate abstention even in similar

circumstances.[6]   Under Burford, NOPSI, and controlling Third

Circuit case law, this is not a case where Burford abstention is

appropriate.

The Third Circuit addressed a situation similar to that at

hand in Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743

(3d Cir. 1982).  In that case, the plaintiff had challenged,

among other things, Solebury Township's denial of a building

permit.  The district court abstained on the basis of Burford,

citing the "traditionally local nature of land use decisions and

the danger of unwarranted federal interference with such

traditionally local functions."  Heritage Farms, Inc. v. Solebury

Township, 507 F. Supp. 33, 35-36 (E.D. Pa. 1980), rev'd, Heritage

Farms, Inc. v. Solebury Township, 671 F.2d 743 (3d Cir. 1982).

However, the Third Circuit disagreed with the district

court's decision to abstain under Burford.  The Court held that

because the Pennsylvania Municipalities Planning Code delegated

local land use decisions to local planning commissions, there was

"no uniform state policy for land use and development - policies

necessarily differ[ed] from municipality to municipality."

Heritage Farms, Inc., 671 F.2d at 747.  Indeed, the Court

explained that through the plaintiff's complaint, "[t]he policies

---

[6] For example, in Rucci, the district court's decision to
abstain was based in part on the fact that no federal claims
remained.  Rucci, 130 Fed. Appx. at 577.

embodied in the Municipalities Planning Code are not being
attacked - it is rather the application of those policies by a
single township that is at issue.  In fact, if it is found that
the defendants acted unlawfully, the state and local policies
will be vindicated."  Id. at 748.

Likewise, no New Jersey state policy is being attacked here.
Plaintiffs take issue with a single land use decision by a single
township's planning board.  Through their lawsuit, Plaintiffs
hope to uphold New Jersey's state-wide policies, as embodied in
the Local Redevelopment and Housing Law and the New Jersey
Constitution.  Federal review of this case will not "be
disruptive of state efforts to establish a coherent policy" with
respect to land use issues.  Therefore, Burford abstention is
inappropriate under the second prong of NOPSI.

Having decided not to abstain under Burford, this court must
now address the issue of supplemental jurisdiction over the
pendent state law claims.

III.  Supplemental Jurisdiction

Defendants have requested that this Court decline to
exercise supplemental jurisdiction over Plaintiffs' pendent state
law claims.  In the interests of judicial economy, this Court
will exercise supplemental jurisdiction over all justiciable
pendent state law claims pursuant to 28 U.S.C. § 1367(a).

**CONCLUSION**

This Court has subject matter jurisdiction over Plaintiffs' claims in Counts 1 through 5 and 9 through 12 of the Amended Complaint. These claims are ripe for adjudication, are not moot, and are not barred by the Rooker-Feldman doctrine. However, Counts 6 through 8 of the Amended Complaint are dismissed as moot. Counts 13 and 14 of the Amended Complaint are dismissed without prejudice because they are not ripe for adjudication.

This Court will not abstain from exercising its jurisdiction over the justiciable claims. In the interests of judicial economy, this Court will exercise supplemental jurisdiction over all remaining pendent state law claims pursuant to 28 U.S.C. § 1367.


_/s/ Noel L. Hillman_____

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.


Page 27