UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MT HOLLY CITIZENS IN ACTION, INC., et al., | : <br> : <br> : |
| Plaintiffs, | :    Civil Action No. <br> :    **08-2584 (NLH)** <br> : |
| v. | : <br> : |
| TOWNSHIP OF MOUNT HOLLY, et al., | : <br> :    **OPINION** <br> : |
| Defendants. | : <br> : |

**Appearances:**

DOUGLAS E. GERSHUNY, EXEC. DIR.
OLGA D. POMAR
DAVID M. PODELL
SOUTH JERSEY LEGAL SERVICES, INC.
745 MARKET STREET
CAMDEN, NJ 08102
*Attorneys for Plaintiffs*

R. WILLIAM POTTER
POTTER & DICKSON
194 NASSAU STREET
PRINCETON, NJ 08542
*Attorney for Plaintiffs*

SUSAN ANN SILVERSTEIN
AARP FOUNDATION LITIGATION
601 E STREET, NW
WASHINGTON, DC 20049
*Attorney for Plaintiffs*

GAETANO MERCOGLIANO
SWEENEY & SHEEHAN
216 HADDON AVENUE, SUITE 500
WESTMONT, NJ 08108
*Attorney for Defendant Triad Associates, Inc.*

M. JAMES MALEY
MALEY & ASSOCIATES
931 HADDON AVENUE
COLLINGSWOOD, NJ 08108
*Attorney for Defendant Mount Holly Township, et al.*

```
WILLIAM J. DESANTIS
BALLARD SPAHR ANDREWS & INGERSOLL LLP
PLAZA 1000 - SUITE 500
MAIN STREET
VOORHEES, NJ 08043
```
*Attorney for Defendant Keating Urban Partners, L.L.C.*

**HILLMAN, District Judge**

This matter comes before the Court on plaintiffs' motion for preliminary injunctive relief. In so moving, plaintiffs rely solely on their claim that defendants violated the Fair Housing Act, Title VIII, as amended, 42 U.S.C. § 3604(a). For the reasons expressed below and at oral argument, plaintiffs' motion will be denied.

## BACKGROUND

Since the filing of plaintiffs' complaint, this case has involved several hearings, the filing of numerous motions and a second amended complaint, and the issuance of two Opinions. At issue is the redevelopment of the Mount Holly Gardens neighborhood (the "Gardens") in Mount Holly, New Jersey. Plaintiffs are low-income, African-American, Hispanic and "white," residents of the Gardens, who object to the plan because they are being forcibly removed from their homes, which are being replaced with new, much higher-priced market rate homes. Plaintiffs contend that the redevelopment plan is violative of several laws, but they are currently seeking a preliminary injunction to stop the redevelopment based on the defendants'

2

alleged violation of the Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act or FHA), 42 U.S.C. § 3601 et seq. They argue that the redevelopment plan has a disparate impact on the African-American and Hispanic residents, and they are facing irreparable harm from the threat of losing their homes and their community ties, being inadequately compensated for their properties, and being unable to obtain affordable and decent replacement housing.

Defendants counter that they did not violate the FHA because there is no intentional discrimination or disparate impact on the Garden residents, and even if there were, the defendants are proceeding pursuant to a bona fide governmental interest in the least restrictive way.  Therefore, defendants argue that plaintiffs are not entitled to a preliminary injunction.[1]

## DISCUSSION

In <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S. Ct. 365, 377 (2008), the Supreme Court recently reiterated that a "preliminary injunction is an extraordinary remedy never awarded as of right," and directed lower courts that "in each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding

---

[1] Defendants have also moved to dismiss plaintiffs' FHA claim.  Because the standard for reviewing a motion for preliminary injunction is different from a motion to dismiss pursuant to Rule 12(b)(6), the Court will not address defendants' motion to dismiss at this time.

of the requested relief." Winter, 129 S. Ct. at 377.  It is based on these principles that this Court assesses plaintiffs' request for an injunction to enjoin defendants from continuing with their redevelopment plan.

In order to obtain a preliminary injunction, a plaintiff must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.  Id. With regard to the first two elements, the Supreme Court has instructed that "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id. at 375-76 (citation omitted). With regard to the second two elements, the Supreme Court has emphasized that in "exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Id. at 376-77.

In this case, plaintiffs have not demonstrated, at this stage in the proceedings, that they have pleaded a successful Fair Housing Act claim, they have not shown that they will suffer an irreparable injury, and they have not demonstrated that an

injunction is in the best interest of the public or that the equities tip in their favor.

**A.   Likelihood of Success on the Merits**

Section 3604(a) of the Fair Housing Act makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, <u>or otherwise make unavailable or deny</u>, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (emphasis added).

The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class. <u>Community Services, Inc. v. Wind Gap Mun. Authority</u>, 421 F.3d 170, 176 (3d Cir. 2005). Plaintiffs here contend that the Gardens redevelopment plan has a disparate impact on the minorities living in the Gardens. In order to prove their claim, plaintiffs must first establish a prima facie case of disparate impact. <u>Resident Advisory Board v. Rizzo</u>, 564 F.2d 126, 148 (3d Cir. 1977). To show disparate impact, plaintiffs must show that the Township's actions have had a greater adverse impact on the protected groups (here, African-Americans and Hispanics) than on others. <u>Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains</u>, 284 F.3d 442, 466-67 (3d Cir. 2002). If a plaintiff establishes his prima facie case, the burden shifts to the defendant to demonstrate justification. The "justification

5

must serve, in theory and practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no other alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." Rizzo, 564 F.2d at 149.  Finally, "[i]f the defendant does introduce evidence that no such alternative course of action can be adopted, the burden will once again shift to the Plaintiff to demonstrate that other practices are available." Id. at 149 n.37.  "If the Title VIII prima facie case is not rebutted, a violation is proved." Id. at 149.

Here, for the purposes of their motion for preliminary injunction, plaintiffs have not demonstrated that they will likely succeed with their FHA claim because they have not demonstrated that they can make their prima facie case. Plaintiffs argue that the redevelopment plan has a disparate impact on minorities in two ways.  First, plaintiffs argue that the redevelopment more negatively affects minorities in Mt. Holly than non-minority residents because the redevelopment is driving out the minority population of Mt. Holly.  To support their position, plaintiffs present a report of a demographic and statistical expert, Andrew A. Beveridge, Ph.D., who states that as of 2000, seventy-five percent of the people living in the Gardens were minority residents.  Dr. Beveridge states that the Gardens contains a highly concentrated minority population, more

6

than any other area of Mt. Holly.  Consequently, Dr. Beveridge opines that the redevelopment of the Gardens effectively and significantly reduces the minority population in Mt. Holly. Plaintiffs contend that this violates the FHA.

Second, plaintiffs argue that the redevelopment plan has a disparate impact on minorities because the plan is targeted at an area that is populated by mostly minorities.  Plaintiffs live in the Gardens because for families with limited income, the Gardens represented an attractive affordable housing opportunity. Demolishing the Gardens and replacing the current housing with higher-priced homes, and only a few low-income units, effectively causes the targeted reduction of Mt. Holly's minority population. This, too, plaintiffs argue is a violation of the FHA.

The statistical repercussions of redevelopment do not provide evidence that the Township implemented the plan to intentionally or effectively drive out the minority population of Mt. Holly.  Indeed, even though plaintiffs have pointed out that the redevelopment of the Gardens has reduced the minority population of Mt. Holly, they have not accounted for how many minorities will move into the new housing.  Furthermore, and more importantly for the plaintiffs' FHA claim of disparate impact, the redevelopment plan does not apply differently to minorities than non-minorities.  Several plaintiffs classify themselves as "white," yet the plan affects them in the exact same way as their

minority neighbors.

The real effect of the Gardens redevelopment is that there will be less lower-income housing in Mt. Holly. Although the Township may have some obligation with regard to providing a certain number of low-income housing pursuant to other law, the reduction of low-income housing is not a violation of the FHA. The FHA prohibits the Township from making unavailable a dwelling to any person because of race--it does not speak to income. Redevelopment of blighted, low-income housing is not, without more, a violation of the FHA. Here, where fourteen homes are occupied by African-American plaintiffs, thirteen homes are occupied by Hispanic plaintiffs, and six homes are occupied by "white" plaintiffs, and all are affected in the same way by the redevelopment, the Court cannot find, on the current record at this preliminary injunction stage, that plaintiffs will succeed on their disparate impact FHA claim.

Even if plaintiffs were able to establish their prima facie case, they have not rebutted the Township's legitimate interest in the redevelopment, and they have not shown how an alternative course of action would have a lesser impact. These points also speak to the three other elements plaintiffs must prove for a preliminary injunction--irreparable harm, public interest and equities--and these elements are discussed in depth below. For the purposes of establishing an FHA claim, however, it is

8

important to note that redevelopment of the community to remove blight conditions is a bona fide interest of the State.  In 1958, the New Jersey Supreme Court commented, "Community redevelopment is a modern facet of municipal government.  Soundly planned redevelopment can make the difference between continued stagnation and decline and a resurgence of healthy growth.  It provides the means of removing the decadent effect of slums and blight on neighboring property values, of opening up new areas for residence and industry." Wilson v. City of Long Branch, 142 A.2d 837, 842 (N.J. 1958).  More specifically with regard to the Gardens redevelopment, the New Jersey Appellate Division found that "[t]he dilapidated, overcrowded, poorly designed community, in addition to the high level of crime in the area, is clearly detrimental to the safety, health, morals and welfare of the community." Citizens In Action v. Township Of Mt. Holly, 2007 WL 1930457, 13 (N.J. Super. Ct. App. Div. July 5, 2007).  It is clear that the Township has a legitimate interest in the redevelopment of the Gardens.

**B.   Irreparable Harm, Public Interest & Balance of Equities**

Plaintiffs have also failed, at this preliminary injunction stage, to demonstrate that they will suffer irreparable harm, or that it would be in the public's best interest to halt the redevelopment of the Gardens.  To date, the majority of the Gardens has been vacated, with these vacated homes either being

9

boarded up or demolished.  Plaintiffs are still living in the Gardens, but they claim that the demolition and vacancies have created even more blight and unsafe living conditions.  Both sides agree that the vacant homes have created fire hazards, crime, squatters, graffiti, roaches and mold.  They request, however, that the Court enjoin the Township from acquiring the remaining occupied homes through eminent domain, forcibly evicting tenants and homeowners, and otherwise pressuring residents to move out.[2]  Plaintiff contend that this relief is necessary to maintain the status quo while their claims are being litigated against the Township.

Effectively, plaintiffs are seeking to remain living in the blighted and unsafe conditions until they are awarded money damages for their claims and sufficient compensation to secure housing in the local housing market.  Although couched at times like an effort to have the development go up around them, like a highway built around a protected tree, or to have their units rehabilitated, this makes little if no practical sense after years of litigation, approved redevelopment plans, and the expenditure of significant public resources. At this late stage, the only real practical remedy is for plaintiffs to receive the fair value for their home as well as proper and non-

---

[2]Plaintiffs state that their request for an injunction does not seek to stall the first phase of redevelopment construction, which is the building of a 200-unit apartment building and 70 townhouses on a vacant 62-acre site.

discriminatory relocation procedures and benefits.[3]

On a motion for preliminary injunction, the Third Circuit has emphasized that "the injury must be of a peculiar nature, so that compensation in money cannot atone for it." Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987) (citation omitted). It could be argued that not being properly compensated so that plaintiffs are rendered homeless or forced to live in an undesirable location is a special type of injury for preliminary injunction purposes. Plaintiffs, however, have provided no evidence to demonstrate this will occur. Instead, plaintiffs rely on their statistician, who states that plaintiffs will not be able to afford to live in the newly constructed housing[4] and that they most likely will not find comparably-priced housing within Mt. Holly, which is evidenced by the fact that only 19 of 62 families relocated by defendant Triad found housing within the Township. Plaintiffs do not provide any evidence the redevelopment will render them homeless--they only argue that the redevelopment will render them unable to remain in the Gardens

---

[3] The relief they are seeking is inconsistent with proving the fourth element of their FHA claim--namely, that an alternative course of action to eminent domain and relocation is viable.

[4] Fifty-six low income housing units are planned for the new development. Defendants represent that under New Jersey law these low income homes cannot be promised specifically to the current Garden residents, but rather the homes must be disseminated pursuant to a lottery system.

11

area specifically, or in the Township generally.[5]

This claim of harm is speculative. We simply do not know at this stage where the remaining Garden residents will find alternative housing. We do know that there is substantial evidence former residents have been successfully relocated both within and outside the Township, that these efforts are ongoing, that some current residents may yet find housing in the redevelopment, and that these efforts are or will be funded, at least in part, by the defendants. Failure to demonstrate that the harm plaintiff is suffering will not be compensated through money damages standing alone defeats plaintiff's application.[6] See Morton v. Beyer, 822 F.2d at 367 ("To obtain a preliminary injunction, the moving party must demonstrate both a likelihood of success on the merits and the probability of irreparable harm

---

[5] The evidence on the record shows that other Garden residents whose homes have been acquired by the Township and have been relocated are pleased with both their compensation and place of relocation. In fact, the evidence demonstrates that many residents now have significantly improved living conditions and are in better circumstances financially. Additionally, the defendants represent, and plaintiffs do not dispute, that none of the people who have been relocated and wanted to remain in Mt. Holly were unable to do so.

[6] The Court recognizes the line of cases that suggests that the loss of one's home, a unique and special piece of real estate having significant personal meaning, can be irreparable harm. That argument, however, proves too much. Taken to its logical extreme, such a rule would perforce preclude redevelopment projects whenever residential real estate is impacted. That is not the law. What the law requires is that parties from protected groups be fairly treated and adequately compensated for their loss.

12

if relief is not granted, [and] we cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent."). Stated differently, even if plaintiffs had demonstrated a successful FHA claim for preliminary injunction purposes, of primary significance is that monetary compensation will redress their FHA claim, as well as all their other claims. Thus, even if plaintiffs leave their homes and end up in an undesirable location, if they are successful on any of their claims and are awarded their requested relief--money damages--they can use that compensation to obtain the housing they are entitled to by a judgment in their favor.

Similarly, for the purposes of a preliminary injunction, plaintiffs have not shown how their interests outweigh the public interest nor have demonstrated how the Township should proceed in a different manner. As mentioned above, both sides agree that before the redevelopment began, the Gardens was a blighted neighborhood in need of major improvement. Now that the redevelopment has been underway for several years, the conditions of the Gardens has become even more of a hazard--to the people still living there, to the workers, and to the community at large. Every level of the New Jersey state courts has agreed and permitted the redevelopment to proceed, despite plaintiffs' continued challenges. Plaintiffs have not demonstrated any viable alternative to the continuance of the redevelopment plan,

13

and to halt the process at this point as plaintiffs request would be to subject everyone to crime, disease and injury.

The Court recognizes that being forced from one's home with the fear of not being able to afford a comparable living situation, all in the name of redevelopment and the creation of houses one cannot afford, is a difficult prospect and an emotional issue. It is compounded by the fact that redevelopment directly affects low-income families who lack the resources for self-help. This is evident in the report issued by the Public Advocate, which uses the Gardens redevelopment as an example of why New Jersey's redevelopment laws should be reformed.[7] This

---

[7] The Court notes that the certification of Marcia Holt, an employee of defendant Keating who has been responsible for the acquisition of property in the Gardens and for the management of Township owned property within the Gardens for the past two years, evidences that the defendants have gone to great lengths to assist Garden residents with their relocation, and all attendant issues that arise from relocation. The assistance provided to the Gardens residents includes clearing of property titles, credit counseling, rental assistance, assistance with school, legal, and educational issues, wellness checks for the elderly, transportation services, and general counseling. Ms. Holt has even purchased items--such as toilet paper, garbage bags, a child's car seat--with her own money to assist residents. Ms. Holt has also detailed the stories of dozens of families she and others have helped in improving their living and financial conditions. Plaintiffs have not provided any evidence that any of these people have been dissatisfied with their relocation compensation and location.

As a corollary issue, defendants have moved to have Ms. Holt's certification filed under seal. This issue was addressed at the hearing held on December 5, 2008. Because the certification contains sensitive personal information of non-parties to this action, plaintiffs do not contest the filing of Ms. Holt's certification under seal, no party has intervened to contest the filing of this document under seal, and a redacted version has been filed on the public docket, the Court will grant

Court, however, cannot legislate from the bench, and it is required to follow the law as it currently exists. Plaintiffs' request for preliminary injunction is based on their FHA claim. Because the Court finds that plaintiffs have not shown that they are likely to succeed on such a claim or suffer irreparable injuries, and because the public interest and balance of equities are in defendants' favor, the Court is precluded from issuing an injunction.[8]

## CONCLUSION

For the reasons expressed above, plaintiffs' request for preliminary injunction must be denied. An appropriate Order will be entered.

Date:   February 13, 2009            s/Noel L. Hilman

At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

defendants' motion to seal. See Local Rule 5.3(c).

[8]Aside from their request for injunctive relief, all of plaintiffs' claims, including their FHA claim, may proceed in due course. As noted above, however, plaintiffs' claims are currently subject to pending motions to dismiss by defendants.