**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MT HOLLY CITIZENS IN ACTION, INC., et al., | : : | |
| | : | Civil Action No. |
| Plaintiffs, | : | **08-2584 (NLH)(JS)** |
| | : | |
| v. | : : | |
| TOWNSHIP OF MOUNT HOLLY, et al., | : : | **OPINION** |
| | : | |
| Defendants. | : : | |

**Appearances:**

DOUGLAS E. GERSHUNY, EXEC. DIR.
OLGA D. POMAR
DAVID M. PODELL
SOUTH JERSEY LEGAL SERVICES, INC.
745 MARKET STREET
CAMDEN, NJ 08102
*Attorneys for Plaintiffs*

R. WILLIAM POTTER
POTTER & DICKSON
194 NASSAU STREET
PRINCETON, NJ 08542
*Attorney for Plaintiffs*

SUSAN ANN SILVERSTEIN
AARP FOUNDATION LITIGATION
601 E STREET, NW
WASHINGTON, DC 20049
*Attorney for Plaintiffs*

GAETANO MERCOGLIANO
SWEENEY & SHEEHAN
216 HADDON AVENUE, SUITE 500
WESTMONT, NJ 08108
*Attorney for Defendant Triad Associates, Inc.*

M. JAMES MALEY
MALEY & ASSOCIATES
931 HADDON AVENUE
COLLINGSWOOD, NJ 08108
*Attorney for Defendant Mount Holly Township, et al.*

WILLIAM J. DESANTIS
BALLARD SPAHR ANDREWS & INGERSOLL LLP
PLAZA 1000 - SUITE 500
MAIN STREET
VOORHEES, NJ 08043
*Attorney for Defendant Keating Urban Partners, L.L.C.*

**HILLMAN, District Judge**

This matter comes before the Court on defendants' motions to dismiss all counts in plaintiffs' complaint pursuant to Federal Civil Procedure Rule 12(b)(6).  For the reasons expressed below, defendants' motions will be granted in part, denied in part, and continued in part.

<u>**BACKGROUND**</u>

This case involves the redevelopment of the Mount Holly Gardens neighborhood (the "Gardens") in Mount Holly, New Jersey. Plaintiffs are low-income, African-American, Hispanic and "white," residents of the Gardens, who object to the plan because they are being forcibly removed from their homes, which are being replaced with new, much higher-priced market rate homes. Plaintiffs claim that defendants--the Township of Mt. Holly, its manager and mayor, the construction company selected to undertake the redevelopment, Keating Urban Partners, LLC, and the company hired by Keating to conduct the relocation activities, Triad Associates, Inc.-- violated Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act or FHA), 42 U.S.C. § 3601 et seq. (Count One against all defendants); the Civil Rights Act of 1866,

2

42 U.S.C. § 1982 (Count Two against the Township); the Equal Protection Clause of the U.S. Constitution, brought pursuant to 42 U.S.C. § 1983 (Count Three against the Township); New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (Count Four against all defendants); Equal Protection Clause of the New Jersey State Constitution (Count Five against the Township); Due Process Clause of the New Jersey State Constitution (Count Six against the Township); Due Process Clause of the U.S. Constitution, brought pursuant to 42 U.S.C. § 1983 (Count Seven against the Township); New Jersey Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq. (Count Eight against the Township); and the General Welfare Clause of the New Jersey State Constitution (Count Nine against the Township).

Defendants have moved to dismiss all these claims against them.  During the briefing of these motions, this case has involved several hearings, a denial of a TRO, the filing of a second amended complaint, and the issuance of three Opinions. Most recently, the Court denied plaintiffs' request for a preliminary injunction to stop the redevelopment based on the defendants' alleged violation of the FHA.  (Docket No. 94.)  The plaintiffs had argued that the redevelopment plan has a disparate impact on the African-American and Hispanic residents, and they are facing irreparable harm from the threat of losing their homes and their community ties, being inadequately compensated for

3

their properties, and being unable to obtain affordable and decent replacement housing.  The defendants had countered that they did not violate the FHA because there is no intentional discrimination or disparate impact on the Garden residents, and even if there were, the defendants are proceeding pursuant to a bona fide governmental interest in the least restrictive way. The Court found that, for the purposes of denying a preliminary injunction, plaintiffs had not pleaded a successful Fair Housing Act claim.  Specifically, the Court found that plaintiffs could not prove their prima facie case of disparate impact, and even if they were able to establish their prima facie case, they did not rebut the Township's legitimate interest in the redevelopment, and they did not show how an alternative course of action would have a lesser impact.

The Court's holding on the preliminary injunction motion presents a peculiar procedural posture in which to hear defendants' motions to dismiss.  Defendants filed their motions to dismiss prior to the preliminary injunction hearing, and even though plaintiffs' opposition and defendants' replies were filed a few days after, none of the briefing mentions the Court's findings with regard to the preliminary injunction.  This is understandable, because in deciding defendants' motions to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6),

4

the Court must accept all well-pleaded allegations in the
complaint as true, view them in the light most favorable to the
plaintiff, and must only consider the facts alleged in the
pleadings, the documents attached thereto as exhibits, and
matters of judicial notice.  Southern Cross Overseas Agencies,
Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir.
1999).   The Court, however, cannot ignore the parties' briefing
and representations at oral argument on the preliminary
injunction motion, and the Court cannot ignore its findings and
legal conclusions.  Thus, the question is whether the Court's
Opinion and Order on the preliminary injunction motion can be
considered a "matter of judicial notice," and to what extent can
the Court rely on that Opinion and Order in deciding the instant
motions to dismiss.

The Third Circuit has held that although "a prior judicial
opinion constitutes a public record of which a court may take
judicial notice, it may do so on a motion to dismiss only to
establish the existence of the opinion, not for the truth of the
facts asserted in the opinion." Lum v. Bank of America, 361 F.3d
217, 222 n.3 (3d Cir. 2004) (citation omitted).  "'[A] court that
examines a transcript of a prior proceeding to find facts
converts a motion to dismiss into a motion for summary
judgment.'"  Id. (citing Southern Cross, 181 F.3d at 427 n.7
(explaining that "[i]t has been suggested that the appropriate

5

analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement")).  Thus, to the extent that findings of fact were made in deciding the preliminary injunction, and the Court wishes to rely on those findings to decide the motions to dismiss, the motions to dismiss must be converted into one for summary judgment.

"When a District Court decides to convert a motion to dismiss into a motion for summary judgment, it must provide the parties 'reasonable opportunity' to present all material relevant to a summary judgment motion, and the parties can take advantage of this opportunity only if they have 'notice of the conversion.'"  In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280, 287-88 (3d Cir. 1999) (citing Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989)).  Notice must be "unambiguous and must fairly apprise the parties that the court intends to convert the motion."  Id. (citations and quotations omitted).  Notice need not be express to meet these standards, but it is recommended that courts provide express notice when they intend to convert a motion to dismiss. Id.

Based on the foregoing, the Court will analyze each count in plaintiffs' complaint to determine whether defendants' motions can be decided as motions to dismiss, or whether they must be

6

converted.  If they must be converted, the Court will provide the parties with sufficient time to respond.

### 1.  Count One - Fair Housing Act

The sole basis for plaintiffs' motion for a preliminary injunction was their Fair Housing Act claim.  In the Opinion denying plaintiffs' motion, the Court explained the legal standard for proving an FHA claim, and determined that it did not appear that plaintiffs would be successful on that claim.  The Court explained as follows:

> Section 3604(a) of the Fair Housing Act makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a) (emphasis added).  The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class.  Community Services, Inc. v. Wind Gap Mun. Authority, 421 F.3d 170, 176 (3d Cir. 2005).  Plaintiffs here contend that the Gardens redevelopment plan has a disparate impact on the minorities living in the Gardens.  In order to prove their claim, plaintiffs must first establish a prima facie case of disparate impact.  Resident Advisory Board v. Rizzo, 564 F.2d 126, 148 (3d Cir. 1977).  To show disparate impact, plaintiffs must show that the Township's actions have had a greater adverse impact on the protected groups (here, African-Americans and Hispanics) than on others.  Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains, 284 F.3d 442, 466-67 (3d Cir. 2002).  If a plaintiff establishes his prima facie case, the burden shifts to the defendant to demonstrate justification.  The

7

"justification must serve, in theory and practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no other alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact."  Rizzo, 564 F.2d at 149.  Finally, "[i]f the defendant does introduce evidence that no such alternative course of action can be adopted, the burden will once again shift to the Plaintiff to demonstrate that other practices are available."  Id. at 149 n.37.  "If the Title VIII prima facie case is not rebutted, a violation is proved."  Id. at 149.

Here, for the purposes of their motion for preliminary injunction, plaintiffs have not demonstrated that they will likely succeed with their FHA claim because they have not demonstrated that they can make their prima facie case.  Plaintiffs argue that the redevelopment plan has a disparate impact on minorities in two ways.  First, plaintiffs argue that the redevelopment more negatively affects minorities in Mt. Holly than non-minority residents because the redevelopment is driving out the minority population of Mt. Holly.  To support their position, plaintiffs present a report of a demographic and statistical expert, Andrew A. Beveridge, Ph.D., who states that as of 2000, seventy-five percent of the people living in the Gardens were minority residents.  Dr. Beveridge states that the Gardens contains a highly concentrated minority population, more than any other area of Mt. Holly.  Consequently, Dr. Beveridge opines that the redevelopment of the Gardens effectively and significantly reduces the minority population in Mt. Holly.  Plaintiffs contend that this violates the FHA.

Second, plaintiffs argue that the redevelopment plan has a disparate impact on minorities because the plan is targeted at an area that is populated by mostly minorities.  Plaintiffs live in the Gardens because for

families with limited income, the Gardens
represented an attractive affordable housing
opportunity.  Demolishing the Gardens and
replacing the current housing with higher-
priced homes, and only a few low-income
units, effectively causes the targeted
reduction of Mt. Holly's minority population.
This, too, plaintiffs argue is a violation of
the FHA.

The statistical repercussions of
redevelopment do not provide evidence that
the Township implemented the plan to
intentionally or effectively drive out the
minority population of Mt. Holly.  Indeed,
even though plaintiffs have pointed out that
the redevelopment of the Gardens has reduced
the minority population of Mt. Holly, they
have not accounted for how many minorities
will move into the new housing.  Furthermore,
and more importantly for the plaintiffs' FHA
claim of disparate impact, the redevelopment
plan does not apply differently to minorities
than non-minorities.  Several plaintiffs
classify themselves as "white," yet the plan
affects them in the exact same way as their
minority neighbors.

The real effect of the Gardens
redevelopment is that there will be less
lower-income housing in Mt. Holly.  Although
the Township may have some obligation with
regard to providing a certain number of low-
income housing pursuant to other law, the
reduction of low-income housing is not a
violation of the FHA.  The FHA prohibits the
Township from making unavailable a dwelling
to any person because of race--it does not
speak to income.  Redevelopment of blighted,
low-income housing is not, without more, a
violation of the FHA.  Here, where fourteen
homes are occupied by African-American
plaintiffs, thirteen homes are occupied by
Hispanic plaintiffs, and six homes are
occupied by "white" plaintiffs, and all are
affected in the same way by the
redevelopment, the Court cannot find, on the
current record at this preliminary injunction

stage, that plaintiffs will succeed on their
disparate impact FHA claim.

Even if plaintiffs were able to
establish their prima facie case, they have
not rebutted the Township's legitimate
interest in the redevelopment, and they have
not shown how an alternative course of action
would have a lesser impact.  These points
also speak to the three other elements
plaintiffs must prove for a preliminary
injunction--irreparable harm, public interest
and equities--and these elements are
discussed in depth below.  For the purposes
of establishing an FHA claim, however, it is
important to note that redevelopment of the
community to remove blight conditions is a
bona fide interest of the State.  In 1958,
the New Jersey Supreme Court commented,
"Community redevelopment is a modern facet of
municipal government.  Soundly planned
redevelopment can make the difference between
continued stagnation and decline and a
resurgence of healthy growth.  It provides
the means of removing the decadent effect of
slums and blight on neighboring property
values, of opening up new areas for residence
and industry." Wilson v. City of Long
Branch, 142 A.2d 837, 842 (N.J. 1958).  More
specifically with regard to the Gardens
redevelopment, the New Jersey Appellate
Division found that "[t]he dilapidated,
overcrowded, poorly designed community, in
addition to the high level of crime in the
area, is clearly detrimental to the safety,
health, morals and welfare of the community."
Citizens In Action v. Township Of Mt. Holly,
2007 WL 1930457, 13 (N.J. Super. Ct. App.
Div. July 5, 2007).  It is clear that the
Township has a legitimate interest in the
redevelopment of the Gardens.

(Feb. 13 Op. at 5-9.)

Thus, based on the foregoing analysis of plaintiffs' FHA

claim, it appears that when facts beyond those contained in the

10

complaint are considered, plaintiffs do not have a viable claim. In order, however, for the Court to consider its previous findings and the evidence presented at the preliminary injunction hearing, the Court must convert the present motions to dismiss into ones for summary judgment on plaintiffs' FHA claim.

Upon conversion, defendants have the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Their burden has already been met based on the findings of law and fact from the preliminary injunction hearing, which may now be considered due to the conversion of the motion. As the facts existed at the time of the preliminary injunction hearing, there was insufficient evidence to prove that defendants violated the FHA.

Because defendants have met their burden, the burden shifts to plaintiffs. Id. In order to defeat summary judgment, plaintiffs now must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial on whether the redevelopment has a disparate impact on a protected group, and, if so, whether defendants have a legitimate interest in the redevelopment and have no alternative course of action that would have a lesser impact. Due to the conversion of the motions, plaintiffs must be given the opportunity to meet their burden to defeat summary judgment. Consequently, defendants' motions to dismiss will be adjourned to provide notice to

11

plaintiffs and time to compile and present their evidence.[1]

### 2. Counts Two, Three, Five - Civil Rights Act and State and Federal Equal Protection Clause

Plaintiffs claim that the Township violated the Civil Rights Act of 1866, 42 U.S.C. § 1982, the Equal Protection Clause of the U.S. Constitution, brought pursuant to 42 U.S.C. § 1983, and the Equal Protection Clause of the New Jersey State Constitution.  In order to prove such claims, plaintiffs must show that they were the target of intentional, purposeful discrimination by the Township.  City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 194 (2003) (citation omitted) ("'Proof of racially discriminatory intent or purpose is required' to show a violation of the Equal Protection Clause."); Bradley v. U.S., 299 F.3d 197, 205 (3d Cir. 2002) (stating that in order to establish a claim under the Equal Protection Clause, a plaintiff needs to prove that the actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose); Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (citations and quotations omitted) ("In order to bring an action under § 1982, a plaintiff must allege with specificity facts sufficient

---

[1]Triad specifically argues, and Keating joins in that argument, that it cannot be held liable under the FHA because it had no part in the drafting and adoption of the Township's redevelopment plan, and its actions with regard to the relocation activities do not fall within the province of the FHA-protected conduct.  The Court will address these arguments, if necessary, following plaintiffs' supplemental briefing.

to show or raise a plausible inference of (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of race."); Greenberg v. Kimmelman, 494 A.2d 294, 308 (N.J. 1985) (stating that if a law is facially neutral, "an equal protection claim could succeed only if the statute had an invidious purpose").

Even though plaintiffs have pleaded that through the redevelopment plan the Township is intentionally seeking to deprive plaintiffs and other African-Americans and Hispanics of the right to property and equal protection under the law, in the Opinion denying plaintiffs' request for preliminary injunction, the Court found that plaintiffs did not demonstrate that the Township "implemented the development plan to intentionally or effectively drive out the minority population of Mt. Holly." (Op. at 7.)  Thus, as with their FHA claim, this claim must be converted to one for summary judgment, and plaintiffs must be afforded the opportunity to provide other proof to support their claims of intentional discrimination.

### 3.    Count Four - New Jersey Law Against Discrimination

Plaintiffs claim that all defendants violated the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12.5 and 10:5-4.  N.J.S.A. 10:5-12.5 provides,

> It shall be an unlawful discrimination for a
> municipality, county or other local civil or political
> subdivision of the State of New Jersey, or an officer,
> employee, or agent thereof, to exercise the power to

13

regulate land use or housing in a manner that
discriminates on the basis of race, creed, color,
national origin, ancestry, marital status, familial
status, sex, gender identity or expression, nationality
or disability.

Plaintiffs claim that defendants are violating this
provision of the NJLAD because the redevelopment plan is causing
"the disproportionate displacement and forced removal of African-
American and Hispanic households, that have reduced and will
continue to reduce the overall number of African-American and
Hispanic households living in Mt. Holly Township, and that
discriminate against Africa-American and Hispanic households
living in the Gardens neighborhood in the provision of services
or facilities in connection with housing, that will create
barriers for African-American households to remain in and move
into Mt. Holly Township, and that thus have a discriminatory
impact upon the basis of race, color and national origin to
perpetuate segregation within Mt. Holly Township . . . ."
(Second Am. Compl. ¶ 218.)  Plaintiffs also allege that
defendants have violated this provision of the NJLAD by
intentionally discriminating against plaintiffs in the Gardens
neighborhood.  (Id.  ¶ 219.)

In addition, plaintiffs allege that defendants have
"otherwise" discriminated against them in violation of N.J.S.A.
10:5-4 (id.  ¶ 220), which provides,

All persons shall have the opportunity to obtain
employment, and to obtain all the accommodations,

14

advantages, facilities, and privileges of any place of
public accommodation, publicly assisted housing
accommodation, and other real property without
discrimination because of race, creed, color, national
origin, ancestry, age, marital status, affectional or
sexual orientation, familial status, disability,
nationality, sex , gender identity or expression or
source of lawful income used for rental or mortgage
payments, subject only to conditions and limitations
applicable alike to all persons. This opportunity is
recognized as and declared to be a civil right.

Defendants have moved to dismiss these claims on several
bases.  First, the Township argues that plaintiffs' claims
brought pursuant to N.J.S.A. 10:5-12.5 must be brought in New
Jersey state court, and therefore must be dismissed.  Second, the
Township argues that plaintiffs' claims pursuant to N.J.S.A.
10:5-4 must be dismissed because that provision does not provide
a cause of action, but is rather a general statement about the
sweep of the NJLAD.  Finally, all defendants argue that even if
plaintiffs' claims pursuant to either section of the NJLAD could
be maintained here, plaintiffs have failed to plead facts to
support such claims.

With regard to the Township's first argument, the court in
Kessler Institute for Rehabilitation, Inc. v. Mayor and Council
of Borough of Essex Fells, 876 F. Supp. 641, 664-65 (D.N.J.
1995), found that claims brought pursuant to N.J.S.A. 10:5-12.5
are required to be brought in New Jersey state court.  The court
explained that even though the general enforcement provision,
N.J.S.A. 10:5-13, contains permissive language ("may" initiate

15

suit in Superior Court), N.J.S.A. 10:5-12.5, which governs discrimination in land use policy by a municipality, states that an action "shall" be brought in Superior Court.  Kessler, 876 F. Supp. at 664; see N.J.S.A. 10:5-12.5(b) ("Notwithstanding . . . section 10:5-13, any person claiming to be aggrieved by unlawful discrimination under this section shall enforce this section by a private right of action in Superior Court.").  Thus, the Kessler court dismissed the plaintiffs' claims brought pursuant to N.J.S.A. 10:5-12.5 because they belonged in state, rather than federal, court.

Plaintiffs argue that the Kessler court's decision should not be followed.  They argue that because the other provisions of the NJLAD may be enforced through filing a complaint with the Division of Civil Rights or the filing of a complaint in the state or federal courts, see N.J.S.A. 10:5-13, N.J.S.A. 10:5-12.5(b) should be interpreted to only disallow the filing of a claim pursuant to that section in the Division of Civil Rights, but allow the claim to be brought in court--either federal or state.  Plaintiffs, however, provide no basis for this interpretation, other than their general proposition that their interpretation is more consistent with "established precedent and legislative intent."  (Pl. Opp. at 29.)

Plaintiffs are correct that the general enforcement provision provides two remedies: (1) "Any person claiming to be

16

aggrieved by . . . unlawful discrimination may, personally or by
an attorney-at-law, make, sign and file with the division a
verified complaint. . . ."; or (2) "Any complainant may initiate
suit in Superior Court under this act without first filing a
complaint with the division or any municipal office."   N.J.S.A.
10:5-13.  Further, despite the NJLAD's direction that a party
"may initiate suit in Superior Court under this act," NJLAD
claims can, and have been, properly advanced in federal court
pursuant to 28 U.S.C. § 1332 and/or 28 U.S.C. § 1367.  This Court
agrees with the <u>Kessler</u> court, however, which rejected
plaintiffs' same argument.  The <u>Kessler</u> court explained,

> Plaintiffs argue that this language in § 10:5-12.5
> means that the alternative remedy of filing a complaint
> with the New Jersey Division of Civil Rights provided
> in § 10:5-13 is not available for claims involving
> alleged discrimination in land use by a municipality.
> Plaintiffs disagree, however, that § 10:5-12.5 requires
> adjudication in New Jersey Superior Court.
> This Court concludes that the New Jersey Superior
> Court has exclusive jurisdiction over Plaintiffs' NJLAD
> claims.  Given the strong state interests involved in
> land use regulation, . . . it is entirely plausible
> that the New Jersey Legislature intended to avoid
> federal court interference in this area.  As a result,
> this Court sees no reason not to accord § 10:12.5 its
> plain meaning.  This federal district Court lacks
> jurisdiction over claims of discrimination in land use
> policy by a municipality arising under N.J.S.A.
> 10:5-12.5.

<u>Kessler</u>, 876 F. Supp. at 664.  No court has disagreed with this
interpretation, and the New Jersey Legislature has not amended
the NJLAD to comport with plaintiffs' proffered interpretation.

Here, as in Kessler, the redevelopment of a blighted neighborhood, and discrimination claims with regard to that redevelopment, were carved out of the NJLAD's general enforcement provision in N.J.S.A. 10:5-13, and the New Jersey Legislature mandated that such claims be brought in the Superior Court.  This Court finds no compelling argument to deviate from that directive.  Accordingly, plaintiffs' NJLAD claims pursuant to N.J.S.A. 10:5-12.5 must be dismissed.

Next, the Court also agrees with the Township's argument that plaintiffs' claims pursuant to N.J.S.A. 10:5-4 must be dismissed because that provision does not provide a cause of action.  In Bumbaca v. Township of Edison, 861 A.2d 156, 160 (N.J. Super. Ct. App. Div. 2004), the New Jersey Appellate Division considered whether the NJLAD prohibits nepotism because the statute references the term "familial status."  In determining that the NJLAD does not prohibit the practice of nepotism, the court noted that even though the NJLAD "is remedial legislation which must be liberally construed," that "liberality of interpretation does not require turning a blind eye to the plain meaning of the statute, which is always our starting point."  Bumbaca, 861 A.2d at 160 (citations omitted).  The court then referenced N.J.S.A. 10:5-3, which "sets forth the purposes of the LAD," and N.J.S.A. 10:5-4, which "sets out the general sweep of the entire statutory scheme."  Id. at 161.  Finally, the

court referenced N.J.S.A. 10:5-12, which "sets out at length the specifics of those practices deemed to constitute" discrimination.  Id.

Even though the Bumbaca court did not specifically address whether a plaintiff can assert a cause of action pursuant to N.J.S.A. 10:5-4, its analysis supports the notion that the provision is a "general sweep" rather than the delineation of the specific practices violative of the statute.  Further, as noted by the Bumbaca court, the plain language of the statute is controlling, and N.J.S.A. 10:5-4 is titled, "Obtaining employment, accommodations and accommodation privileges without discrimination; declaration of civil right."  Accordingly, this Court finds that N.J.S.A. 10:5-4 is simply the "declaration" of a person's rights under the NJLAD, and it is not, like N.J.S.A. 10:5-12, a provision which creates a cause of action.

Consequently, because plaintiffs' N.J.S.A. 10:5-12 claim must be advanced in state court and plaintiffs' N.J.S.A. 10:5-4 claim is invalid, plaintiffs' NJLAD claims must be dismissed.

### 4.   Counts Six and Seven - Due Process Clause of the New Jersey and Federal Constitutions

Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner.  Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (N.J. 1995) (citing Kahn v. U.S., 753 F.2d 1208, 1218 (3d Cir. 1985)).  The minimum

requirements of due process are notice and the opportunity to be heard.  <u>Id.</u> (citing <u>U .S. v. Raffoul</u>, 826 F.2d 218, 222 (3d Cir. 1987) (citing <u>Goss v. Lopez</u>, 419 U.S. 565 (1975))).  Plaintiffs claim that the Township violated their due process rights by failing to give individual notice to all owners of properties to be acquired under its redevelopment plan and otherwise provide meaningful notice to residents with regard to the effects of the redevelopment activity upon their property rights.  (Second Am. Compl. ¶ 226.)  Plaintiffs also allege that the Township made revisions to the redevelopment plan without first holding public meetings or conducting a formal process, as required by N.J.S.A. 10:4-13 and N.J.S.A. 40A:12A-7, and even though the Township eventually held open meetings with regard to the revisions, it had already decided to implement them, which rendered the public process a sham.  (<u>Id.</u> ¶ 230.)  Plaintiffs claim that the Township's failure to conduct an open process violated their due process rights and fundamental fairness.  (<u>Id.</u> ¶ 232.)

   The problem with plaintiffs' due process claims is that they do not sufficiently delineate the Township's alleged violative conduct.  According to plaintiffs' second amended complaint, the Township formally adopted the original redevelopment plan in March 2005, another "concept plan" was approved in September 2007, and the plan was revised in September 2008.  More specifically, on September 22, 2008, the Township adopted the

20

Revised West Rancocas Redevelopment Plan, which invalidated the original redevelopment plan. It is unclear, however, which part of the redevelopment process allegedly violated plaintiffs' due process rights. Plaintiffs' complaint generally alleges that all aspects of the process did not adequately afford plaintiffs the right to be heard, and that the revised redevelopment plan was adopted "without meaningful consideration of the residents' objections." (Second Amended Compl. ¶¶ 185-86.)

To the extent that plaintiffs are challenging the original redevelopment plan, even taking as true plaintiffs' due process concerns, because that plan was invalidated, there is no justiciable controversy--indeed, the invalidation of the plan is one remedy for such a violation. Thus, any due process claims based on the adoption of the original plan must be dismissed. To the extent that plaintiffs are challenging the process of the adoption of the revised plan, plaintiffs are directed to amend their claims to more precisely plead the basis for the alleged due process violations with regard to the revised plan.[2]

---

[2]Defendants also argue that because the adoption of the revised plan was a legislative act, there is no cognizable due process right, see Rogin v. Bensalem Tp., 616 F.2d 680 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981), and further that even if such a right exists the uniquely New Jersey judicial remedy of an action in lieu of prerogative writ provides all the process that is due. Cf., John E. Long, Inc. v. The Borough of Ringwood, 61 F. Supp. 2d 273, 279 (D.N.J. 1998)(state satisfies due process by establishing means to challenge governmental action). In light of our decision to allow plaintiffs to re-plead these counts, that issue is no longer ripe. However, plaintiffs are reminded that any re-pleading of this due process claim must

See <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007) (stating that Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim unless doing so would be inequitable or futile"); <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)) ("A district court, in weighing a motion to dismiss, asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'").

**5.   Counts Eight - Violation of the New Jersey Local Redevelopment and Housing Law**

Plaintiffs claim that the Township violated the New Jersey Local Redevelopment and Housing Law (NJLRHL), N.J.S.A. 40A:12A-1 et seq., by arbitrarily, capriciously, and unreasonably adopting the revised redevelopment plan.[3]  Specifically, plaintiffs allege:  (1) the plan was revised without opportunity for meaningful community input and without consideration by the

_____

accord with Fed.R.Civ.P. 11 and should not claim a due process violation where federal law does not recognize such a claim either because the challenged action is a legislative act or the state had provided all the process that is due.

[3]The Court notes that following a bench trial on plaintiffs' challenge to the original redevelopment plan, on May 5, 2005, the New Jersey Superior Court found in favor of the Township and declared that the plan complied with the requirements of the NJLRHL.  (Second Amended Compl. ¶ 119.)

planning board and "Council of the Residents' comments"; (2) the plan does not further its own objectives; (3) the plan is substantially inconsistent with the Township's Master Plan; (4) the plan is inconsistent with the State housing plan and fails to address the inconsistency mandated by N.J.S.A. 40A:12A-7; (5) the plan does not address whether it is consistent with the County master plan, as mandated by N.J.S.A. 40A:12A-7; (6) the plan is inconsistent with the purposes of the NJLRHL, as it "fails to promote the advancement of community interests and physical development which will be most conducive to social and economic improvement."  (Second Amended Compl. ¶ 238.)

As a primary matter, it is important to recognize that "the adoption of a redevelopment plan is essentially a legislative function of a municipal government, akin to the adoption of a master plan or a zoning ordinance."  Milford Mill 128, LLC v. Borough of Milford, 946 A.2d 75, 82-83 (N.J. Super. Ct. App. Div. 2008).  It is also important to recognize that instead of courts, "municipal bodies are composed of local citizens who are far more familiar with the municipality's characteristics and interests and therefore uniquely equipped to resolve such controversies."  First Montclair Partner, L.P. v. Herod Redevelopment I, L.L.C., 885 A.2d 952, 955 (N.J. Super. Ct. App. Div. 2005) (citations omitted).  "Consequently, courts will not upset such decisions unless they are arbitrary, unreasonable or capricious."  Id.

Here, plaintiffs fail to state a valid claim under the NJLRHL.  First, plaintiffs' claim that the plan is substantially inconsistent with the Township's Master Plan, the State's housing plan, and the County's master plan, is unsupportable.  The NJLRHL provides, "All provisions of the redevelopment plan shall be either substantially consistent with the municipal master plan or designed to effectuate the master plan," but it further provides that "the municipal governing body may adopt a redevelopment plan which is inconsistent with or not designed to effectuate the master plan by affirmative vote of a majority of its full authorized membership."  N.J.S.A. 40A:12A-7(d).  Thus, even taking as true plaintiffs' claim that the revised redevelopment plan was inconsistent with other plans, the NJLRHL allows for such inconsistencies.

Second, with regard to plaintiffs' claim that the revised redevelopment plan does not address those inconsistencies, plaintiffs are correct that the NJLRHL requires that the "reasons for so acting" are "set forth in the redevelopment plan."  N.J.S.A. 40A:12A-7(d).  However, plaintiffs' conclusory allegations of the existence of any inconsistencies, and the accordingly absent explanation of those inconsistencies, are insufficient to state a viable claim.  Stating a viable claim "requires a complaint with enough factual matter (taken as true) to suggest the required element,"  Phillips v. County of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Bell Atlantic
v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)); see also Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and "bald assertions" or
"legal conclusions" are inadequate, In re Burlington Coat Factory
Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  Plaintiffs
do not allege any facts describing how the revised redevelopment
plan differs from the County's master plan and the State's
housing plan.[4]  Without these facts, it cannot be determined
whether those inconsistencies were not contained in the revised
redevelopment plan.  The failure of plaintiffs to include these
basic factual allegations is fatal to their claims.

     With regard to plaintiffs' claims that the public was not
afforded meaningful input, this is simply a restatement of their
due process claim, and plaintiffs do not point to a provision in
the NJLRHL that requires such public input.  With regard to
plaintiffs' claims that the revised plan does not further its own
objectives, and is otherwise inconsistent with the NJLRHL,[5] these

---

[4]Plaintiffs' complaint states that the revised redevelopment
plan "acknowledges that it is inconsistent with the Township
Master Plan because it does not reduce density and because it
calls for total demolition rather than rehabilitation of existing
homes, but concludes that this inconsistency is warranted based
on economic conditions and redeveloper preference.  The Plan
states that it there would be no adverse impacts to neighboring
Westhampton Township land uses and that the Plan is consistent
with the State Development and Redevelopment Plan."  (Second
Amended Compl. ¶ 183(f).)

[5]N.J.S.A. 40A:12A-2 states:

The Legislature hereby finds, determines and declares:

25

are also conclusory claims and provide no basis for the court to

upset the decision of the municipality and determine that the

Township's actions were arbitrary, capricious and unreasonable.

Consequently, plaintiffs' NJLRHL claims must be dismissed.

**6.    Count Nine - Violation the General Welfare Clause of the New Jersey Constitution**

Plaintiffs claim that the Township's use of its municipal

powers to redevelop existing low income residential neighborhoods

violates the General Welfare Clause of the New Jersey

Constitution.  Plaintiffs' claim is based on the Mt. Laurel

doctrine, which prohibits municipalities from using their zoning

---

a. There exist, have existed and persist in various communities of this State conditions of deterioration in housing, commercial and industrial installations, public services and facilities and other physical components and supports of community life, and improper, or lack of proper, development which result from forces which are amenable to correction and amelioration by concerted effort of responsible public bodies, and without this public effort are not likely to be corrected or ameliorated by private effort.

b. From time to time the Legislature has, by various enactments, empowered and assisted local governments in their efforts to arrest and reverse these conditions and to promote the advancement of community interests through programs of redevelopment, rehabilitation and incentives to the expansion and improvement of commercial, industrial, residential and civic facilities.

c. As a result of those efforts, there has grown a varied and complex body of laws, all directed by diverse means to the principal goal of promoting the physical development that will be most conducive to the social and economic improvement of the State and its several municipalities.

d. It is the intent of this act to codify, simplify and concentrate prior enactments relative to local redevelopment and housing, to the end that the legal mechanisms for such improvement may be more efficiently employed.

laws to exclude lower income households and obligates them to
affirmatively provide a realistic opportunity for construction of
its fair share of law and moderate income housing.  See Southern
Burlington County NAACP v. Mount Laurel, 336 A.2d 713 (N.J.
1975); Southern Burlington County NAACP v. Mount Laurel, 456 A.2d
390 (N.J. 1983).  The Mt. Laurel doctrine, however, has never
been applied to municipal redevelopment powers.  The Township
argues, and plaintiffs agree, that because this claim is one of
first impression under New Jersey state law, this Court should
decline subject matter jurisdiction over this state law claim
pursuant to 28 U.S.C. § 1367(c)(1), and dismiss this claim
without prejudice.  The Court agrees with this approach.  See
Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140
F.3d 478, 487 (3d Cir. 1998) (citing 28 U.S.C. § 1367(c)(1);
Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.
1995)) (stating that supplemental jurisdiction is exercised as a
matter of discretion, and a court may decline to exercise
supplemental jurisdiction over a state law claim where "the claim
raises a novel or complex issue of state law").  This is
especially true when a claim turns on a interpretation of a state
constitution. Kadetsky v. Egg Harbor Tp. Bd. Of Ed., 164 F. Supp.
2d 425, 436 (D.N.J. 2001).  Here the need for deference is even
more pronounced.  The Mt. Laurel doctrine, its judicial
reiteration, the legislative response, the continuing

implementation of an administrative process, and the intensely local impact of this evolving right, present a complex web best left to the expertise and sound judgment of the New Jersey courts.[6]

### 7.   Punitive Damage claims

Plaintiffs are seeking punitive damages for all of their claims.  The Township has moved to dismiss plaintiffs' request for punitive damages, arguing that under various legal principles, punitive damages cannot be imposed against municipalities.

To the extent that plaintiffs' NJLAD, NJLRHL, and General Welfare Clause claims will be dismissed (Counts Four, Eight, and Nine), the Township's argument with regard to those claims is moot.  With regard to plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 (Counts Three and Seven - Equal Protection Clause and Due Process Clause), punitive damages are unavailable against the Township.  It is well-established that municipalities, and more broadly, state and local governments entities, are immune from punitive damages under § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Doe v. County of

---

[6]In light of this disposition, the Court need not address whether this count fails to state of claim because defendants have followed the regulatory scheme established by the New Jersey Fair Housing Act and the Council on Affordable Housing.  Indeed, in light of our decision to decline the exercise of supplemental jurisdiction, it would be inconsistent for us to do so.

Centre, PA, 242 F.3d 437, 455 (3d Cir. 2001).  With regard to plaintiffs' state constitutional claims (Counts Five and Six), the New Jersey Tort Claim Act bars the imposition of punitive damages against the municipality.  N.J.S.A. 59:9-2(c); Herrera v. City of New Brunswick, 2008 WL 305275, *17 (D.N.J. 2008).  With regard to plaintiffs' FHA and Civil Rights Act claims (Counts One and Two), the Court will reserve decision on this issue pending consideration of the converted motions.

### 8.   Claims against the individual defendants

For the claims plaintiffs have asserted against the Township, plaintiffs have also asserted them against Kathleen Hoffman, in her official capacity as township manager, and Jules Thiessen, in his official capacity as mayor.  Defendants have moved to dismiss these claims against them because none of the allegations in the complaint refer to actions taken by Hoffman or Thiessen specifically, but rather to the Township, Council, or the Planning Board.  Defendants also argue that they have immunity from plaintiffs' claims because if any allegations in the complaint can be construed as against them, they were acting in their legislative or discretionary capacities, which entitles them to absolute immunity.

In opposition to defendants' motion, plaintiffs argue that they need the benefit of discovery in order to lodge specific allegations against Hoffman and Thiessen.  Until discovery is

complete and the full extent of their conduct is known, plaintiffs argue that the legal issue of whether Hoffman or Thiessen are entitled to immunity cannot be decided.  Plaintiffs further note, however, that they "do not seek to hold Hoffman and Thiessen personally liable for money damages, but merely ask for the same injunctive relief against Hoffman and Thiessen as they seek against the Township."  (Pl. Opp. at 39 n.16.)

Under the pleading standard clarified in <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) and reaffirmed in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009), a plaintiff cannot use the discovery process to find, in the first instance, facts to support general claims advanced against a defendant.  Rather, a plaintiff must allege enough "factual matter (taken as true) to suggest" that a defendant may be liable for the alleged violation.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).  Here, plaintiffs admit that they are not currently aware of facts to more-specifically plead their claims against Hoffman and Thiessen.  Indeed, they argue that defendants' immunity challenge cannot be resolved because of the absence of such facts.  Consequently, plaintiffs' claims against Hoffman and Thiessen will be dismissed without prejudice to plaintiffs' right to reassert their claims against them when, and if, they have gathered sufficient facts to state a viable claim.[7]

_____

[7]In light of this disposition, the Court need not address the individual defendants' alternative argument that they are

## **CONCLUSION**

For the reasons expressed above, defendants' motions to dismiss will be granted in part, denied in part, and continued in part.  Counts Four, Eight, and Nine are dismissed as to all defendants.  Counts Six and Seven are dismissed without prejudice to plaintiffs' right to amend their complaint within 30 days to more-specifically plead those claims.  Counts One, Two, Three, and Five are converted into motions for summary judgment; plaintiffs shall have 30 days to oppose defendants' converted motions on these counts.  All counts are dismissed without prejudice as to defendants Hoffman and Thiessen.  An appropriate Order will be entered.


Date: October 23, 2009          s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

_____
immune from suit.

31